**STATE of Maine**

v.

**Kenneth SMITH.**

Supreme Judicial Court of Maine.

May 21, 1971.

Michael Westcott, County Atty., Wiscasset, for plaintiff.

Hart & Stinson, Bath, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Chief Justice.

The defendant Kenneth E. Smith was convicted by jury of the crime of burglary at the November term, 1969, in Lincoln County Superior Court. He raises several points of error. The appeal is denied.

## DUPLICITY.

Defendant before trial, by motion under Rule 12(b) (1), M.R.Crim.P., objected to the indictment on the ground that it was duplicitous. He claims the indictment charges him with assault in addition to the offense of burglary under 17 M.R.S.A. § 751.

Our burglary statute, 17 M.R.S.A. § 751, reads as follows:

"Whoever breaks and enters in the nighttime with intent to commit a felony or any larceny or, having entered with such intent, breaks in the nighttime a dwelling house, any person being then lawfully therein, is guilty of burglary. Whether he is, before or after entering, armed with a dangerous weapon, or whether he assaults any person lawfully therein or has any confederate present aiding or abetting or not, in either case he shall be punished by imprisonment for any term of years. * * *."

The indictment charges that

"On or about the 20th day of March, 1969, in the Town of Damariscotta, County of Lincoln, and State of Maine, the above named defendant, Kenneth E. Smith, did break and enter in the nighttime the dwelling house of * * * [L.D.], the said * * * [L.D.] being then lawfully therein, with the intent to commit a felony to wit, rape, and the said Kenneth E. Smith, after he entered said dwelling house, assaulted the said * * * [L.D.]."

It is a well established rule of criminal pleading that two or more substantive offenses may not be joined in the same count of an indictment. The underlying reason for the rule is that a person accused of crime has a constitutional right to know from the face of the criminal pleading the exact offense charged against him and each count of an indictment, information or complaint should present only a single issue which, if sustained, subjects the accused to specific punishment readily ascertainable by him.

Even though duplicity is not a defect of substance but one of form only, the rule barring duplicity is important both to the accused and the public. By restricting any single count of an accusation to only one substantive offense, the rule affords the accused the necessary safeguard against any embarrassment which a proliferation of charges would cause him in the preparation of his defense. On the other hand, the public is better assured of the purity of the jury trial process when, by reason of the rule, the jury's attention may not be distracted into a consideration of a variety of issues. See, State v. Morton, 1946, 142 Me. 254, 49 A.2d 907. But, when several acts relate to the same transaction and together constitute but one offense, they may be charged in the same count. State v. Shannon, 1939, 136 Me. 127, 3 A.2d 899.

Our Court in State v. Neddo, 1898, 92 Me. 71, 42 A. 253, said that an indictment charging breaking and entering and larceny in a certain sense sets out two substantive

offenses; nevertheless it was held in that case that an indictment so framed was not open to the objection of duplicity. The Court viewed it as an exception to the general rule and a practice of long standing in England and in this country. To the same effect, Commonwealth v. Tuck, 1838, Mass., 20 Pick. 356; State v. Brady, 1842, 14 Vt. 353; State v. Squires, 1840, 11 N.H. 37; Butler v. The Commonwealth, 1885, 81 Va. 159; Stoops v. Commonwealth, 1822, Pa., 7 Serg. & R. 491, 10 Am.Dec. 482.

Our Court, however, has never specifically decided whether an indictment for burglary under 17 M.R.S.A. § 751 is subject to the objection of duplicity when as in the instant case it charges the breaking and entering of a dwelling house in the nighttime with intent to commit the felonious crime of rape and further alleges the actual commission not of the intended rape, but of the lesser offense of assault.

At one time in the history of 17 M.R.S.A. § 751, if the burglary of a dwelling house with a person lawfully therein was committed by a person armed with a dangerous weapon or aided and abetted by a confederate, or if the burglar after entry assaulted the person lawfully therein, the statute provided life imprisonment as the sole penalty for the burglarious breach of the dwelling house accompanied by such aggravating circumstances. But, in the absence of these conditions of aggravation, then the punishment for the stated offense of burglary could either be imprisonment for life or for any term of years. See, Revised Statutes of Maine, 1871, c. 119, s. 7. In 1872, the Legislature amended the above mentioned statute by providing that "[i]n *all cases of burglary* and rape the court may sentence for life or for a term of years." (Emphasis supplied). P.L.1872, c. 12. Thus, the statutory aggravating circumstances of the 1871 law became meaningless as statutory controls over the punishment to be meted out for burglary and rape. In the 1883 consolidation, the Legislature set out to reflect the 1872 amendment of the law. Instead of deleting

from the burglary statute the previously penalty-controlling aggravating circumstances, it retained the form of the statute but indicated in positive terms that *in either case*, (1) whether the burglary of a dwelling house with a person lawfully therein was accompanied by any of the aggravating circumstances ·such as with dangerous weapons or confederates or involved an assault upon the occupant thereof, or (2) whether none of these aggravating conditions were present, the punishment for this statutory offense of burglary was the same, either imprisonment for life or for any term of years. See, Revised Statutes, 1883, c. 119, s. 7. Imprisonment for life was dropped in 1903. See, Revised Statutes, 1903, c. 120, s. 7.

Our present statute, 17 M.R.S.A. § 751, is substantially in the same format as the 1883 version. The only change was made by Public Laws, 1947, c. 167, § 1 when the Legislature brought within the crime of burglary the breaking and entering of the dwelling house with intent to commit any larceny. Whether, by retaining in the statutory definition of burglary the enumerated statutory circumstances oftentimes present when homes are burglarized but no further necessary to support an enhanced penalty, the Legislature attempted to give approval in charging burglary to a criminal practice which allowed a recital of the surrounding circumstances including, in addition to the intent to commit a particular felony, the statement that the intended felony or an assault on a person lawfully in the dwelling house had actually been committed, need not be decided in the instant case.

 The indictment, by alleging the commission of an assault upon L. D., a person lawfully in the dwelling house at the time of the burglary, did not necessarily charge a separate substantive offense. True, there is no compound offense in Maine of burglary and committing rape or assault after entry, as is the case under 17 M.R.S.A. § 2103 of breaking, entering and larceny. Nevertheless, a necessary element of the

crime of burglary is that the breaking and entering be done with the intent to commit a felony, in the instant case, rape. That being so, the indictment must allege the felonious purpose and the additional assertion that an assault was committed on a person lawfully in the dwelling house served only to indicate that the breaking and entering was made with intent to rape. The assault could be proven even if the indictment merely charged the breaking and entering with intent to commit rape. The averment of the assault serves only to characterize and verify the felonious intent to rape with which the accused broke and entered. The crime charged was burglary and the defendant was tried for that crime only. The instructions were tailored upon that theory and the jury was specifically cautioned that the defendant was charged only with the crime of burglary and no other. The Justice below instructed the jury:

"Now in this case it is immaterial whether or not rape was in fact committed on * * * [L.D.]. It is immaterial whether or not in fact an attempt to rape * * * [L.D.] took place so far as the commission of any offense. These matters are only important, and you should only consider them in the light of whether or not it establishes to you that there was an intent on the part of the individual who broke and entered into this dwelling at the time he entered to commit the crime of rape. So you will consider what happened there only in relation to whether or not it establishes an intent on the part of the individual to commit the felony upon the inside."

The objection of duplicity is not meritorious. See, State v. Johnston, 1896, 119 N.C. 883, 26 S.E. 163; State v. Ryan, 1888, 15 Or. 572, 16 P. 417; State v. Phipps, 1895, 95 Iowa 487, 64 N.W. 410; Farris v. Commonwealth, 1890, 90 Ky. 637, 14 S.W. 681, 12 Ky.Law Rep. 592.

## DENIAL OF MOTION TO SUPPRESS.

The defendant filed with the Court below a motion under Rule 41(e), M.R.Crim.P. for the return of certain itemized personal property and for its suppression for use as evidence on the ground that the property was unlawfully seized and taken from him on the night of March 22, 1969 while he was occupying a room at the Oasis Hotel in Rockland, Maine. Smith claims the warrantless seizure cannot be justified as an incident to a lawful arrest, asserting the warrant of arrest to have been issued on a legally deficient affidavit. He advances at the same time the argument that, independently of the arrest warrant, the arresting officer did not have probable cause that the crime of rape had been committed and that the defendant was the party who had committed it to support a warrantless lawful arrest and a legal search and seizure incidental thereto.

Rule 4, M.R.Crim.P. provides that a warrant for the arrest of an accused, not in custody or otherwise before the court, shall issue if it appears from the sworn complaint or affidavit (both being in writing—Rule 3),

"that there is probable cause to believe that an offense has been committed and that the defendant has committed it."

The Rule 3 and 4 prerequisites to a valid issuance of a warrant of arrest were viewed as the structural safeguard to guarantee the mandatory requirements of our Constitutions which these rules were designed to implement. Article I, § 5 of the Constitution of Maine. Amendment IV to the Constitution of the United States applicable to the States through the Fourteenth Amendment.

The constitutional mandate that no warrant shall issue "without probable cause—supported by oath or affirmation" applies equally to arrest warrants as to search warrants. In the absence of an indictment an adequate basis for a finding

of probable cause by the magistrate empowered to issue the warrant of arrest must appear on the face of the complaint or in affidavits of the complainant and his witnesses. It may otherwise appear from statements made on examination under oath before the magistrate, subscribed by the persons making them, filed and made a permanent part of the record in the case. Rules 3 and 4 M.R.Crim.P. See, Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. The factual written information supplied to the magistrate issuing the warrant of arrest, as in the case of the issuance of a warrant for search, must be sufficient to support an independent judgment on his part that probable cause exists for the warrant. Whiteley v. Warden, Wyoming State Penitentiary, 1971, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. Probable cause for warrants of arrest or search must be tested by the same standards, whether federal or state warrants are involved. Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

 The conclusory statement of Officer Janson in the affidavit submitted to the magistrate—

"I, Detective Robert J. Janson being a duly sworn member of the Maine State Police have probable cause to believe that one, Kenneth E. Smith of Waldoborough DOB 7–11–35, on the night and early morning of 3–20–69 did rape one * * * [L.D.] of Bristol Road, Damariscotta at her home in Damariscotta * * *."

—did not provide the necessary factual basis from which a determination of probable cause could be constitutionally determined at the magisterial level, except as the details of the underlying circumstances described in the balance of the affidavit and upon which his assertion was made may justify a finding of probable cause. State v. Cadigan, 1969, Me., 249 A.2d 750.

Officer Janson's stated facts for his conclusion that Smith had raped L. D. at her home in Damariscotta on the night and early morning of March 20, 1969 were listed in his affidavit as follows:

"1. On 3–19–69 Kenneth E. Smith was in possession of a maroon 1965 Chevrolet Hardtop, Maine Registration 319–473, this vehicle was observed between midnight and 1:00 A.M. on 3–20–69 within fifty (50) feet of the * * * [L.D.] driveway by Patrolman Charles Bowers of Damariscotta Police Department and a listing was taken at that time. An empty package of Lucky Strike filter cigarettes was found at the scene of the crime, Mr. Smith smokes Lucky Strike filters.

2. Kenneth Smith fits the description given by * * * [L.D.].

3. On the night of 3–20–69 Kenneth Smith called his wife Francis by telephone and told her that he had broken into the * * * [L.D.] residence and raped * * * [L. D.].

4. Five years ago Kenneth Smith worked on the * * * [L.D.] house as a painter employed by Jack Shoemaker and is familiar with the * * * [L.D.] house."

The officer-affiant fails to state that any of the disclosed facts were of his own personal knowledge or observation, nor does he reveal the source of his information so that the magistrate had no way to assess the reliability of any informer. There is no allegation that the stated facts, if gathered from hearsay sources, were furnished by informers whom the officer had reason to believe to be trustworthy. The affidavit contains no allegation that L. D. claimed to have been raped. There is nothing in the affidavit to explain how the officer came by the report of a telephone call that Smith had told his wife he had broken into the L. D. residence and raped L. D.; without

more, such a report would not establish probable cause of a burglary of the L. D. home nor of the rape of Miss L. D. The statement that Smith was in possession of an automobile at an undisclosed time on March 19, 1969 and that the automobile was seen in the vicinity of the L. D. home between the hour of midnight and 1:00 A.M. that night, without some positive assertion that there was a breaking into the L. D. home and a raping of L. D. at about that hour, other than from an anonymous report of Smith's alleged telephone call to his wife to that effect, will not support probable cause of rape. The other data do not supply the missing crucial facts. From all the facts recited in the affidavit, even if stated to be based on the affiant's personal knowledge, the magistrate could not reasonably infer there was probable cause that Smith had broken into the L. D. home and raped Miss L. D., absent any factual disclosure that a break had actually been made and a rape had actually taken place.

Thus, the warrant for Smith's arrest for the crime of rape was not legal. But a police officer may make an arrest for a felony not committed in his presence if he has probable cause that the felony has been committed and the person arrested is the perpetrator of the crime. State v. Hawkins, 1970, Me., 261 A.2d 255, at 261. If Officer McDunnah who made the arrest in the instant case had probable cause, that is, reasonable ground for belief of Smith's commission of the rape of Miss L. D. or of his burglary into her home on March 19, 1969, then Smith's warrantless arrest would be valid and any reasonable search and seizure incident to such arrest would be valid. Indeed, the search and seizure under such circumstances depend for their validity upon the validity of the arrest. State v. Hawkins, supra; Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145.

The fact that the arresting officer may have relied upon the existence of an invalid arrest warrant would not invalidate the arrest and the search and seizures which took place as incidents thereof if the officer had adequate knowledge independent of the warrant to constitute probable cause. United States v. White, 1965, 4th Cir., 342 F.2d 379; Hagans v. United States, 1963, 5th Cir., 315 F.2d 67, cert. denied 375 U.S. 826, 84 S.Ct. 68, 11 L.Ed.2d 58. An arrest made upon knowledge sufficient to establish probable cause is valid despite the invalidity of an outstanding arrest warrant. Dearinger v. United States, 1967, 9th Cir., 378 F.2d 346, cert. denied, 389 U.S. 885, 88 S.Ct. 156, 19 L.Ed.2d 183.

Probable cause exists where the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent and cautious man in believing that the arrested person had committed or was committing the felonious offense. The essence of "probable cause" is reasonable ground for belief of guilt. State v. Hawkins, supra; State v. Littlefield, 1965, 161 Me. 415, 213 A.2d 431; Beck v. Ohio, 1964, 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142. The information must establish more than a bare suspicion—Henry v. United States, 1959, 80 S.Ct. 168, 361 U.S. 98, 4 L.Ed.2d 134, but it need not equate the quantum of proof necessary to support a conviction—Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Probable cause, however, is to be evaluated from the collective information of the police at the time of arrest and not merely on the personal knowledge of the arresting officer. Johnson v. State, 1970, Ark., 458 S.W.2d 409. The knowledge of each officer working in co-ordination in an attempt to solve a reported crime is the knowledge of all. Probable cause can rest upon the collective information of the police, rather than solely on the knowledge of the officer who actually makes the arrest. United States v. Romero, 1957, 2d Cir., 249 F.2d 371; People v. Peak, 1963, 29 Ill.2d 343, 194 N.E.2d 322; Commonwealth v. McDermott, 1964, 347 Mass. 246, 197 N.E.2d 668; Taylor

v. State, 1965, 238 Md. 424, 209 A.2d 595; State v. Fioravanti, 1965, 46 N.J. 109, 215 A.2d 16; United States v. Pitt, 1967, 4th Cir., 382 F.2d 322.

The Court in Smith v. United States, 1966, 123 U.S.App.D.C. 202, 358 F.2d 833, cert. denied 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448, in the words of our present Chief Justice of the United States Supreme Court, said:

> "The knowledge or information of the arresting officer at the time of arrest is relevant only where an arrest is predicated on that officer's personal observations and information concerning the criminal act. The correct test is whether a warrant if sought could have been obtained by law enforcement agency application *which disclosed its corporate information*, not whether any one particular officer could have obtained it on what information he individually possessed." (Emphasis supplied.)

■ Furthermore, it is not necessary that the collective knowledge of the other police officers be imparted to the arresting officer to make out probable cause. United States v. Bianco, 1951, 3d Cir., 189 F.2d 716. It would be impractical and border on the absurd to require complete briefing of the arresting officers respecting the detailed collective information of the police department as a prerequisite to a valid arrest. Probable cause must be judged on the basis of the composite information in possession of the police and if that knowledge in its totality shows probable cause, a policeman who makes the arrest upon an order to do so under such circumstances, acts upon probable cause. State v. Fioravanti, 1965, 46 N.J. 109, 215 A.2d 16.

■ Trooper McDunnah (the arresting officer) and Detective Janson of the Maine State Police through their own investigation had together more than enough information to establish probable cause that Smith had committed a variety of felonies including rape at the L. D. home on Bristol Road in Damariscotta in the early hours of the morning of March 20, 1969. Both officers, prior to Smith's arrest, had interviewed Miss L. D. and had received from her the information that at about midnight she was awakened by a man who was on top of her in bed and she disclosed the sordid events that followed. She claimed that he raped her and the officers observed bruises about the face. Medical analysis revealed the presence of male sperm in the area of the vagina. Both officers upon investigation of the premises observed the pulling of the telephone wires, the broken cellar window, droppings of blood from the cellar to Miss L. D.'s bedroom. The circumstances as viewed by the officers presented reasonable ground of belief that someone had committed rape upon the person of Miss L. D. Did they have reasonable ground justifying their belief that the defendant Smith had committed the same? With Patrolman Bowers' report that he had observed the Smith auto near the L. D. premises at about the time of the crime, together with the reliable information from defendant's wife herself that Smith who had left with the car had called her to tell her that he had broken into the L. D. home and had raped Miss L. D., the officers had sufficient probable cause to arrest Smith for rape. We conclude that Smith's arrest was valid and the seizures made by the police as incident to a valid arrest were legal and not subject to suppression. There was no error in denying defendant's motion to suppress.

## VOLUNTARINESS OF CONFESSION.

Defendant objected to the admissibility of his signed confession on the ground that it was not voluntarily made. The sole underlying basis for the claim of involuntariness was stated by defendant's counsel to be the officer's disclosure to the accused, prior to confession, that the defendant was in trouble for the following reasons: he, the officer, had a witness that could place defendant's car within 50 feet of the L. D. driveway, was in possession of fibers of

clothing and scrapings of dried blood taken from the scene which could be analysed for comparison with his blood and clothes by the laboratory of the Federal Bureau of Investigation in Washington. The officer informed the defendant he noticed a piece of skin was missing from his hand and the shape and size of the area of the missing skin was the same as of the piece of skin which the officer had retrieved from the L. D. home. Counsel argues that these disclosures psychologically subdued Smith's mental processes to such coercive intensity as to fatally taint his confession as involuntary. We disagree.

 With respect to voluntariness of confessions the test is whether or not in any given case there has been under the totality of the circumstances fundamental fairness and governmental fair play on the part of the police dispelling any coercive effect from the sum total of the operating factors involved. Michaud v. State, 1965, 161 Me. 517, 215 A.2d 87.

 The test of the admissibility of confessions is whether they were extorted from the accused by some threat or elicited by some promise (such would be involuntary and inadmissible), or were made from a willingness on the part of the accused to tell the truth and relieve his conscience (such would be regarded as voluntary and admissible.) State v. Priest, 1918, 117 Me. 223, 103 A. 359.

 Whether a confession is voluntary or involuntary for the purpose of admissibility in evidence must be determined preliminarily as a question of fact by the presiding Justice upon evidence received in the absence of the jury and his ruling upon that preliminary point can be reversed by this Court only when this Court can find as a matter of law that the confession was involuntary in a legal sense. Unless a contrary inference be the only reasonable conclusion to be reached upon the evidence presented, the finding of the presiding Justice must stand. State v. Priest, supra. The

presiding Justice's preliminary hearing may result in an independent finding of involuntariness, in which case the confession is excluded, or in a determination of voluntariness, in which case the confession together with all the surrounding circumstances are then given in evidence to the jury for their evaluation as to voluntariness under proper court instructions. State v. Merrow, 1965, 161 Me. 111, 208 A.2d 659; Duguay v. State, 1968, Me., 240 A.2d 738. These constitutional requirements were followed to the letter in the instant case.

 Where the accused had been fully informed of his rights under Miranda, police disclosure, without misrepresentation, of the State's incriminating evidence against him prior to his confession of the crime will not render the confession involuntary on theoretical grounds of psychological coerciveness. The ultimate conclusion on the issue of voluntariness of the confession lies with the jury. There was no error in ruling that the confession was admissible as evidence.

We have examined the entire record before us and made an independent determination of the ultimate issue of voluntariness. See, State v. Fernald, 1968, Me., 248 A.2d 754. Although we must search for the internal psychic state of the confessing individual, we find no factual basis indicating the operation in the instant case of any overbearing police tactic or pressures which destroyed or critically impaired Smith's mental capacity for self-determination. Police interrogation is an essential part of criminal investigation. The police, however, showed restraint in postponing the interview with Smith until he had had a night's sleep and sobered up. He was fully informed of his rights to remain silent and be represented by counsel, retained or assigned. He was warned that any incriminating statement would be used against him in a court of law. The disclosure to him of the State's evidence was succinct and accurate without emphasis or coercive effort such as might arise from repetitive

insistence upon the force of the State's case. The reference confession was freely and voluntarily made without compulsion or improper inducement of any sort.

## EVIDENCE OF OTHER CRIME.

█ The defendant objected to testimony by the victim describing the commission of the crime against nature upon her and moved for a mistrial on the ground that such evidence served only the purpose of inflaming the jury against him. True, this evidence was highly incriminating; it had relevancy, however, as it tended to establish that, at the time of his breaking and entering of the L. D. home, Smith had the specific evil intent to commit rape as charged against him.

█ Where the acts showing the commission of the substantive offense of the crime against nature were all so closely related in point of time and place and so intimately associated with the acts evidencing the offense charged that they formed together a continuous transactional episode, the whole event could be shown, including what immediately preceded and what immediately followed the act complained of, for the purpose of showing the intent of the accused. State v. Holoubek, 1954, 246 Iowa 109, 66 N.W.2d 861; Osborne v. Commonwealth, 1932, 242 Ky. 574, 46 S.W.2d 1066.

█ When evidence of another crime has a logical tendency to prove against a defendant some element of the crime for which he is tried, such as the intent on the part of the defendant in connection with the offense charged in the indictment, it is admissible. State v. Sinnott, 1957, 24 N.J. 408, 132 A.2d 298. See also, State v. Smith, 1944, 140 Me. 255, at 274, 37 A.2d 246.

## INSTRUCTIONS RESPECTING INTOXICATION.

Defendant claims error in the following instruction,

—"[T]he consumption of alcoholic liquor, that is the mere drinking by an individual in no way excuses that individual from the consequences of any crime that he commits, and in this case if you find that there was any consumption of alcoholic beverage by this Defendant, either before or after or during or at the time of·the alleged incident, I say to you that the consumption of alcoholic beverage in no way excuses or minimizes the responsibility of any individual who commits an offense and so you will not consider that as a defense to any offense, if in fact you find that any offense was committed by this Defendant."—

and in the Court's refusal to instruct the jury to the effect that,

—if it found the defendant did consume liquor, the jury may find that the intoxicating liquor while not an excuse for the crime could be a defense in that it may have impaired his ability to form the specific intent required for the perpetration of the offense of burglary charged in the indictment, to wit, the specific intent to commit rape.—

The defendant was charged with burglary in that he broke and entered in the nighttime the dwelling house of L. D. while she was lawfully therein, *with the intent to commit the felonious offense of rape.* The crime of burglary as charged against Smith required proof beyond a reasonable doubt that at the time of his unlawful breaking and entering of the L. D. home he entertained the specific intent to commit rape. This specific intent is an essential element of the crime of burglary under 17 M.R.S.A. § 751. Its absence at the time of the breaking and entering would disprove or negate the commission of the crime.

Our Court did say in State v. Arsenault, 1956, 152 Me. 121, 124 A.2d 741, that voluntary intoxication is not an excuse for crime, "except in those cases where knowledge or specific intent are necessary elements." The mere fact that a defendant may have been drinking prior to the commission of the offense charged against him does not establish intoxication. In order for intoxication to constitute a valid defense the evidence must show that the defendant's inebriated condition under the circumstances was so great as to render him incapable of entertaining or formulating the specific intent essential to the crime charged. Clarke v. State, 1968, 3 Md.App. 447, 240 A.2d 291.

To be relieved from responsibility for criminal acts, a defendant must not only appear to be under the influence of intoxicating beverages which may under the circumstances lower his threshold of inhibitions or stir in him the impulse to criminal adventures, but his condition must reveal such a degree of complete drunkenness that he is on account of it incapable of forming the requisite intent essential to the commission of the crime charged. State v. Guiden, 1970, 46 Wis.2d 328, 174 N.W.2d 488; People v. Gonzales, 1968, 40 Ill.2d 233, 239 N.E.2d 783.

Before a court is required or justified in giving an instruction submitting to the jury the issue, whether the defendant's condition of inebriety was such as to destroy his mental capacity of having, entertaining or formulating a particular specific intent, there must be evidence upon which to base such an instruction. Unless there was evidence which tended to prove that the mental condition of the defendant from drunkenness was such, at the time of his breaking and entering of the L. D. home, that he was not capable of having the intent to rape, then an instruction upon that subject as requested by the defendant was unauthorized, and the Court below committed no error in failing to give such an instruction. Brennon v. Commonwealth, 1916, 169 Ky. 815, 185 S.W. 489; People v. Turville, 1959, 51 Cal.2d 620, 335 P.2d 678, 686.

In the instant case, the evidence falls far short of showing any mental incapacity from drunkenness to entertain the specific intent of rape at the time of the breaking and entering. The evidence as a whole proves that Smith was in sufficient possession of his faculties to enable him to remember the details of his criminal activity, including his assertion that, although he had attempted to rape Miss L. D., he did not think that he had accomplished this.

We have examined the record and are satisfied that, although there was evidence to the effect that the defendant had been drinking, this evidence did not show that the defendant was so intoxicated as to prevent him from forming an intent to rape at the time he broke and entered the L. D. home.

The defendant in his points of appeal raised other grounds of error. He claims that the Court erred in admitting the testimony of Dr. Powell; in its failure to declare a mistrial for violation of its sequestration order; in restricting the defense in its argument respecting intoxication while permitting the State to comment thereon; in refusing to instruct the jury sufficiently concerning an apparent state of confusion in the return of the verdict; in the denial of its motion for new trial based on the defendant's claim of accumulation of errors. We have examined the record with care and have considered each ground of error raised. None is meritorious.

The entry must be

Appeal denied.

MARDEN, J., sat, but retired before this opinion was adopted.