**STATE of Maine**

v.

**Mary CATLIN.**

Supreme Judicial Court of Maine.

Oct. 5, 1978.

---

Joseph M. Jabar, Dist. Atty., J. William Batten, Asst. Dist. Atty. (orally), Paul D. Mathews, Asst. Dist. Atty., Augusta, for plaintiff.

Sanborn, Moreshead, Schade & Dawson by Gordon H. Smith (orally), Augusta, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

Appellant Mary Catlin was convicted by a jury on August 29, 1977 of theft by unauthorized taking or transfer, 17–A M.R.S.A. § 353. Judgment was entered on September 30. Appellant's timely appeal followed.

We deny the appeal.

Three issues have been raised for our consideration. The first two concern the propriety of the trial Justice's denial of a motion to suppress certain incriminatory statements made by the appellant. The claim is that the statements were inadmissible either because they were involuntary or because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The third issue is raised by the trial Justice's denial of a motion to dismiss appellant's indictment for a violation of her *"right to a speedy trial."*

The jury would have been justified in believing the following facts. Appellant had been an employee of Rix, Inc., a drugstore chain, working as a cashier in the Turnpike Mall store in Augusta. On the evening of December 16, 1976 she was alone at closing time when, allegedly, an armed assailant robbed her of the day's receipts, tied her up in the back of the store and fled. Upon freeing herself from her bonds appellant ran to an adjacent street and flagged down a passing motorist. She was driven to the Augusta Police Station where she reported the robbery.

On March 3, 1977, after some investigation, the Augusta Police Department came to suspect that appellant might have some information as to the identity of her assailant. Accordingly, she was asked, and she agreed, to take a polygraph examination in Lewiston on the next day. Appellant was planning to leave Maine for California, and after consulting an attorney, agreed to the test to clear herself of suspicion.

A detective picked up appellant at her home at 7:30 a. m., as had been agreed, to take her to Lewiston for the test. The crime at issue here apparently was not discussed during this trip. Arriving early, they shared coffee and doughnuts before the test began at 10:00 a. m. *Miranda* warnings were given before the testing session. The detective was not present during the hour-and-a-half test; however, the polygraph operator informed him that it was his conclusion that appellant had known the identity of her assailant *"from day one."*

Driving back to Augusta, the detective repeated the *Miranda* warnings to appellant, then questioned her briefly about the crime. He suggested it would be best for her to tell all she knew since, as he understood the law, the charge would be reduced. Although she appeared willing to talk, and admitted knowing the identity of the robber, appellant refused to name him.

Appellant was returned to her home. Approximately an hour and a half later, after conferring with an Assistant District Attorney and a State Police Officer, appellant was called and asked to come to the Police Station for further questioning by the detective who had questioned her earlier.

Appellant was questioned on this occasion for approximately an hour. The Assistant District Attorney opened the session, but after failing to convince appellant to disclose the name during twenty minutes of questioning, left the room *"in a huff."*

During the session the Assistant District Attorney had presented appellant with a statement which declared in substance that she refused to cooperate with the District Attorney's office in investigating the crime. The Assistant District Attorney repeatedly asked her whether she wished to be a witness or a defendant, noting that her rights were largely determined by which status she assumed. While insisting she was a witness, appellant persisted in refusing to name the robber whom she admittedly knew.

At this point, the State Police Officer reported receiving new evidence implicating appellant as a principal in the robbery. He thereupon placed appellant under arrest and read her the *Miranda* warnings. Appellant then admitted her involvement in the crime, to the extent of staging the "*robbery*" with a friend and receiving a $300 share of the proceeds of some $1,100.

Defendant's pre-trial motion to suppress her statements on the grounds of involuntariness and *Miranda* violations was denied. She now assigns that denial as error.

Defendant objected to the admission of her incriminating statements on the ground that they were not voluntarily made. On appeal she points again to allegedly coercive aspects of the interrogation process which she claims render the statements involuntary under our "*totality of the circumstances*" test. *Michaud v. State,* 161 Me. 517, 215 A.2d 87 (1965). Among these factors are that:

1. her interrogators were three male law enforcement officers;

2. the questioning was carried out in an abrasive manner;

3. she had been in "*police custody*" throughout the day on which she confessed;

4. she was emotionally distraught during questioning;

5. she was "*threatened*" by the Assistant District Attorney with prosecution for hindering apprehension if she refused to cooperate; and

6. a detective impliedly represented to her that her cooperation would win her prosecution under a less serious charge than might otherwise be brought.

■ As we said in *State v. Smith,* Me., 277 A.2d 481 (1971), the test with respect to the voluntariness of a confession

*is whether or not in any given case there has been under the totality of the circumstances fundamental fairness and governmental fair play on the part of the police dispelling any coercive effect from the sum total of the operating factors involved. Michaud v. State,* 1965, 161 Me. 517, 215 A.2d 87, 277 A.2d 481, 490 (1971).

■ The presiding Justice having determined that the confession was voluntary, our task is confined to determining that "*there is evidence providing rational support for the conclusion he reached.*" *State v. Farley,* Me., 358 A.2d 516, 519 (1976).
*[u]nless a contrary inference be the only reasonable conclusion to be reached upon the evidence presented, the finding of the presiding Justice must stand. State v. Smith, supra,* 277 A.2d at 490.

We find the Justice below was not in error in ruling as he did.

■ The claim that the failure to give *Miranda* warnings immediately upon commencement of questioning by the Assistant District Attorney required suppression of the statements is also without merit. Initially we note that the questioning of appellant at the District Attorney's office was not clearly "*custodial interrogation*" requiring *Miranda* warnings. *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

Assuming, *arguendo,* that the day's events constituted a single interrogation, we nevertheless could not say that the presiding Justice erred in finding that *Miranda* warnings given in the morning to have been effective up to the time they were repeated by another officer later in the day. *State v. Myers,* Me., 345 A.2d 500, 502 (1975). *State v. Peterson,* Me., 366 A.2d 525 (1976). It was not until after the other officer began questioning appellant that she first gave any indication of having personally planned the crime; *Miranda* warnings were timely given.

■ Appellant argues forcefully that, assuming *Miranda* warnings were properly given, they were not competently waived, inasmuch as appellant wished both to cut off the questioning and to speak to someone prior to answering any questions but was denied the exercise of these rights. *Michigan v. Mosely,* 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *State v. Capitan,*

Me., 363 A.2d 221 (1976). In fact, appellant did not specifically request that the questioning halt, nor did she remain silent or ask to leave. She did, however, ask "*to talk with somebody.*" This request, however, was made in reference to the document offered for her signature attesting to her failure to cooperate, not one admitting to criminal conduct, and came during a stage of the questioning when her status was that of recalcitrant witness rather than beleagured suspect.[1]

■ Appellant's claim that she was "*threatened*" by the Assistant District Attorney with prosecution for Hindering Apprehension cannot be grounds for sustaining the appeal. Clearly appellant was informed that this charge could be brought; it was a necessary part of the Assistant District Attorney's lawful attempt to prompt disclosure of the concealed information. It was no more a threat, however, than the disclosure to defendant of the basis of criminal charges against him approved in *State v. Smith, supra.* Here, as in *Smith,* this disclosure "*will not render the confession involuntary on theoretical grounds of psychological coerciveness.*" 277 A.2d 490.

■ Both at the suppression hearing and at trial, appellant argued that an "*implied promise*" by a detective offering appellant a reduction in the charge in exchange for cooperation improperly induced her confession.

We have recently held that "*[a]n inducement to confess is improper when a promise of benefit or reward has been made or implied by one whom the accused could reasonably believe had the authority or power to execute it.*" *State v. Tardiff,* Me., 374 A.2d 598, 601 (1977).

In *Tardiff* the defendant was presented with "*a positive promise that if he made a full confession, the number of offenses with*

which he could be charged would be reduced to one . . . of his own choice, rather than three.*" *Id.* In contrast, the detective's conversation with appellant during the return to Augusta did not involve any elements of bargain or positive promise. He testified at the suppression hearing that

*I wasn't plea bargaining with her, I was just stating a fact, and my interpretation is a fact of law, that if somebody possibly took the money from her, that it would be larceny.*

It is noteworthy that no confession was forthcoming from appellant in response to this conversation. The confession occurred some three hours later, when any supposed inducement presented by these vague statements would be considerably reduced. At that point it is more likely that

*defendant must have come to the realization that the investigation by the police was producing evidence which must inevitably demonstrate [her] guilt and that cooperation with the officers now presented [her] most promising course of conduct. State v. Fernald,* Me., 248 A.2d 754, 763 (1968).

A rational basis clearly existed for the determination made by the Justice below, after a full hearing, that no promises of leniency were made.

Defendant was indicted on March 15, 1977, and arraigned and bailed on March 25, 1977. In May, a hearing on defendant's Motion to Suppress was held, and the matter continued by agreement of counsel to obtain testimony of a witness who was not then available. The Motion to Suppress was denied on June 3, 1977. The trial was scheduled for July 5, 1977, but was continued to July 25, upon motion by the State filed on July 5. A second motion for a continuance by the State was filed and granted on July 21; upon objection by the

---

1. The other officer testified at the suppression hearing that the request came prior to her arrest.

*Q. So she said that she wanted to talk to a couple of people before signing or before talking any further?*

*A. Or talking about whether she was going to be a witness or a defendant, that is what she was referring to.*

**32**

defendant the trial was rescheduled for the week of July 25. Docket conflicts prevented hearing the case that week.

On July 28, 1977, defendant moved to dismiss the indictment for want of a speedy trial; the motion was denied on August 3, 1977.

On August 29, defendant was convicted after a jury trial.

Appellant now assigns as error the denial of her Motion for Dismissal for lack of a speedy trial.

We find no merit in the claim.

■ Whether a criminal defendant has been denied his constitutional right to a speedy trial depends not upon the application of an inflexible rule but upon a balancing of certain factors in the particular context of his case. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. O'Clair,* Me., 292 A.2d 186 (1972); Rule 48(b), M.R.Crim.P. Among the relevant factors are the length of and reason for the delay, the defendant's assertion of his right, and the prejudice inuring to the defendant. *Barker v. Wingo, supra* 407 U.S. at 530, 92 S.Ct. at 2192.

■ However, the analysis suggested in *Barker* need be invoked only when the length of the delay, in the peculiar circumstances of the case, warrants inquiry into the other factors cited.

> *The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of this case. . . . Barker v. Wingo, supra,* 530–531, 92 S.Ct. 2192.

The time span between indictment and trial in this case was approximately 5½ months. We are unable to hold that, in the circumstances, such a delay was "*presumptively prejudicial.*" Compare, *State v. Steeves,* Me., 383 A.2d 1379, 1382 (1978);

*State v. Lewis,* Me., 373 A.2d 603, 608–609 (1977). In reaching this result we are particularly mindful of defense counsel's agreement to continue the suppression hearing to acquire new evidence, and of the fact that neither the record nor appellant's brief demonstrates any actual prejudice occasioned by the delay. *State v. Brann,* Me., 292 A.2d 173, 185 (1972). We note also that appellant's first assertion of her speedy trial right was made on July 28, 1977 and that trial was held within a month of that assertion.

On these facts we cannot hold the delay to have been sufficiently harmful as to amount to a constitutional violation requiring reversal of the conviction and the discharge of the defendant.

The entry must be:

Appeal denied.

Judgment affirmed.