# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

    v.

PAMELA E. DUNNING,

    Defendant.

:
:
:
:
:
:
:
:
:

ID No. 1806002262
In and For Kent County

## ORDER

Submitted: December 21, 2018
Decided: January 2, 2019

### *Upon Defendant's Motion to Suppress*
### DENIED

On this the 2nd day of January, 2019, having considered Defendant Pamela Dunning's (hereinafter "Ms. Dunning") Motion to Suppress and the State's response, as well as the arguments presented at the hearing held on December 21, 2018, the Court finds that there was a substantial basis for the magistrate to determine that the warrant issued in this case was supported by probable cause to search Room 103 of the Best Western Hotel located at 190 Stadium Street in Smyrna, Delaware (hereinafter the "Hotel Room"), and the motion to suppress is **DENIED**.

The allegations of the affidavit of probable cause attached to the search warrant (hereinafter the "Affidavit") are, in summary, as follows:

## I.   Factual Background

On June 4, 2018, Detective William Davis of the Smyrna Police Department (hereinafter the "Affiant") was contacted by Sergeant Dill of the

Delaware State Police Kent County Drug Unit regarding a tip he had received about a large quantity of heroin within the Town of Smyrna city limits. Sergeant Dill then referred the Affiant to Trooper Hamilton of the Delaware State Police.

Trooper Hamilton informed the Affiant that he had a subject in custody for traffic charges along with an outstanding capias (hereinafter the "Informant"). Trooper Hamilton had contacted the Informant as he was placing an order for heroin on his cell phone. Trooper Hamilton advised the Affiant that a female subject had been texting the Informant regarding the sale of heroin. The Informant had told Trooper Hamilton that the female was Pamela Dunning and that Ms. Dunning was staying in Room 103 at the Best Western in Smyrna, Delaware (hereinafter the "Hotel Room"). The phone number that was the source of the texting was confirmed, through the Law Enforcement Database, to be that of Ms. Dunning.

The Informant had disclosed to Trooper Hamilton that he had purchased heroin from Ms. Dunning at 11:00 p.m. the night before in the Hotel Room and that Ms. Dunning had just "re-up'ed her supply." Moreover, the Informant had stated that the heroin was kept in a box under Ms. Dunning's bed in the Hotel Room.

Town of Smyrna detectives responded to the Best Western hotel and confirmed that Ms. Dunning was, indeed, staying in the Hotel Room through June 5, 2018. They also observed Ms. Dunning outside the Hotel Room, sitting in a vehicle registered to her, smoking a cigarette.

Based upon the above information, the Affiant applied for a search warrant of the Hotel Room.[1] A search warrant was issued and illegal contraband was obtained from the Hotel Room by law enforcement, including heroin and drug paraphernalia. Ms. Dunning also gave a statement to law enforcement after the contraband was discovered.

Ms. Dunning now seeks suppression of all items that were seized from the Hotel Room, as well as her statement, arguing that the search warrant fails to show that an independent police investigation had corroborated the Informant's tip. Ms. Dunning argues that the contraband found, as well as her statement to the police, must be suppressed as fruit of the poisonous tree.

The State responds that the warrant was supported by probable cause to believe that evidence of illegal activity would be found in the Hotel Room. The State argues that the warrant establishes not only the identity and location of Ms. Dunning and the contraband, but also that Ms. Dunning was involved in criminal activity.

## II. Legal Standard

In a suppression hearing, the Court sits as the finder of fact and evaluates the credibility of the witnesses.[2] The party with whom the burden rests must persuade the Court by a preponderance of the evidence.[3] Because this was a search and seizure pursuant to warrant, the defense bears the burden.[4]

---

[1] Pursuant to the collective knowledge doctrine, the knowledge of other investigating officers is imputed to the Affiant. *See State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 (Del. 2006). This doctrine will be discussed in more detail below.

[2] *State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Nov. 28, 2016).

[3] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. June 22, 2015).

[4] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

Search warrants may only be issued upon a showing of probable cause.[5] When considering the affidavit, the magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[6] A magistrate's determination of probable cause "should be paid great deference by reviewing courts" and should not "take the form of a *de novo* review."[7] Moreover, in considering "whether the warrant application presented the issuing magistrate with a 'substantial basis' to conclude that probable cause existed," this Court "eschews 'a hypertechnical approach to the evaluation of the search warrant affidavit in favor of a common-sense interpretation.'"[8]

In warrant contexts, probable cause may be "founded on hearsay information provided to the affiant by other officers . . . . [A]n officer-informant relaying the information to the affiant will be considered a reliable source for the information needed to determine probable cause."[9] The Supreme Court of Delaware indicated in *State v. Cooley* that when officers have been in communication with one another, "the collective knowledge of an entire organization may be imputed to an individual officer."[10] Similarly, the United States Court of Appeals for the Third Circuit, along with other jurisdictions, has

---

[5] *Sisson*, 883 A.2d at 875.

[6] *Illinois v. Gates,* 462 U.S. 213, 238–39 (1983). *See also Aguilar v. State of Texas*, 378 U.S. 108, 114 (1964).

[7] *Gates,* 462 U.S. at 238–39.

[8] *Gardner v. State,* 567 A.2d 404, 409 (Del. 1989).

[9] *Hooks v. State,* 416 A.2d 189, 202–03 (Del. 1980).

[10] *State v. Cooley,* 457 A.2d 352, 355 (Del. 1983) (quoting *State v. Schoenbneelt,* 171 Conn. 119, 368 A.2d 117, 119 (Conn. 1976)).

indicated that probable cause is to be evaluated on the basis of the collective information of the police.[11] Thus, as a preliminary matter, it is worth noting that the knowledge of the other investigating officers, including Trooper Hamilton and Sergeant Dill, is imputed to the Affiant.[12]

### III. Discussion

Ms. Dunning's main contention surrounds the legal sufficiency of the Informant's tip to support the issuance of a search warrant in this case. Ms. Dunning argues that the Affidavit only sets forth facts that tend to corroborate identity and location and that are lacking in specificity. Moreover, Ms. Dunning argues that the search warrant fails to show that an independent police investigation corroborated the Informant's tip regarding the alleged illegal activity.

In support of this argument, Ms. Dunning cites to *LeGrande v. State*,[13] where the Delaware Supreme Court held that a search warrant failed to establish probable cause because the affidavit merely set forth facts that tended to corroborate identity and location. In *LeGrande*, the Court held that "…the police only corroborated the accused's identity, the location of his locked apartment, his probationary status, and that his neighbor was wanted. Confirmations of these facts, which could be used to identify LeGrande, '[did] not show that the tipster [had] knowledge of concealed criminal activity.'"[14] The Court went on to state

---

[11] *United States v. Bianco*, 189 F.2d 716, 719 (3d Cir. 1951). *See also State v. Smith*, 277 A.2d 481, 489 (Me. 1971); *State v. Fioravanti*, 215 A.2d 16, 23 (N.J. 1965) ("[p]robable cause must be judged on the basis of [the] composite information" in possession of the police).
[12] *See Sisson*, 883 A.2d at 875 (discussing the collective knowledge doctrine).
[13] *LeGrande v. State*, 947 A.2d 1103 (Del. 2008).
[14] *Id*. at 1111 (quoting *Florida v. J.L.*, 529 U.S. 266, 272 (2000)).

that because there was no independent corroboration by the police about the anonymous tip, the totality of the circumstances did not provide a substantial basis for the warrant.[15]

The Court deems the *LeGrande* decision distinguishable from the case at hand. Unlike the tip in *LeGrande*, the Informant's tip in this case involved detailed evidence of drug activity, and demonstrated that the Informant had particularized knowledge about concealed criminal activity on the part of Ms. Dunning and of the specific location where the alleged illegal activity was taking place.[16] This weighs in favor of his reliability. More importantly, the Court holds that an independent police investigation -- including contacting the Informant while he was placing an order with Ms. Dunning for heroin, confirming that Ms. Dunning was the source of the communication, and observing Ms. Dunning outside of her hotel room -- sufficiently corroborated the Informant's tip. Thus, the totality of the circumstances contained within the warrant affidavit provided a substantial basis for the search warrant to issue. The Court will analyze both of these factors -- *i.e.*, the tipster's reliability and police corroboration -- in more detail below.

---

[15] *Id.*

[16] In *LeGrande*, a probation officer received an anonymous call from one of his probationers who was an acquaintance of the defendant. The tipster described the defendant, the occupant of another apartment in the building, the layout of the building, and the defendant's probationary status, and stated that the defendant possessed contraband in his apartment. In contrast, the tip in this case came pursuant to a confidential informant in police custody who had previously engaged in a drug purchase with the defendant and knew the exact location of where the drugs were kept, as well as the defendant's specific location. *See LeGrande*, 947 A.2d at 1110 ("An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person... Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. *The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.*") (emphasis in original).

Looking first to the reliability of the Informant, the Court notes that the State has not alleged in its response or in the Affidavit that the Informant was past proven reliable. Nevertheless, this does not necessarily make the Affidavit deficient. A tip may be supportive of probable cause as long as the totality of the circumstances demonstrates the tip's reliability. [17] Relevant considerations include "the reliability of the informant, the details contained in the informant's tip, and the degree to which the tip is corroborated by independent police surveillance and information."[18]

The Delaware Supreme Court in *McKinney v. State*[19] and the United States Court of Appeals for the Third Circuit in *United States v. Torres*,[20] have delineated additional circumstances that indicate the reliability of an informant and the information provided in a tip. These circumstances include (1) that the tip was delivered in a face-to-face meeting, allowing the officer an opportunity to assess the informant's credibility through observation;[21] (2) that the informant is exposed to a risk of retaliation by not concealing his identity and may be held responsible if the allegations are discovered to be fabricated;[22] (3) that the content of the tip is not information that would be readily observable to any typical observer or passerby; (4) that the informant providing the information has recently

---

[17] *State v. Holden*, 60 A.3d 1110, 1115 (Del. 2013).

[18] *Cooper v. State*, 32 A.3d 988, at *5 (Del. 2011) (Table); see also *Jones v. State*, 745 A.2d 856, 870 (Del. 1999) (stating relevant considerations for finding of reasonable suspicion: "(1) the specificity of the anonymous tip; (2) independent police corroboration of the facts underlying the tip; and (3) the ability of the tipster to predict future behavior by the suspect.").

[19] 107 A.3d 1045 (Del. 2014).

[20] 534 F.3d 207 (3d Cir. 2008).

[21] *See U.S. v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000) ("[A] tip given face to face is more reliable than an anonymous telephone call.").

[22] *See United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002) ("[O]ne of the characteristics of a known informant that contributes to reliability is that he or she can be held responsible if the allegations turn out to be fabricated.").

witnessed the alleged illegal activity; and (5) that the tip predicts future events, which will allow the officers to test the informant's knowledge or credibility.[23]

Here, the Court finds that the first four factors above all weigh heavily in favor of the tip's reliability.[24] With regard to the first factor, it is apparent that the Informant had a face-to-face interaction with Trooper Hamilton. While the affidavit does not explicitly state that their meeting was face-to-face, it does state that Trooper Hamilton "had [the Informant] in custody for traffic charges along with an outstanding capias," and that Trooper Hamilton "contacted [the Informant] as he was placing an order for heroin on his cell phone." The affidavit also states that "a female subject was texting the subject in custody regarding the sale of heroin." A common-sense (rather than hypertechnical) interpretation of these statements leads to the conclusion that as Trooper Hamilton was taking the Informant into custody, the Informant was being texted about a heroin transaction by Ms. Dunning.

As to the second factor, the Informant was in custody for traffic charges and an outstanding capias, and thus could easily have been held responsible had his allegations turned out to be fabricated.

Regarding the third and fourth factors, the Informant's tip included a variety of specific details that would not be available to any observer and that demonstrated that the Informant had recently witnessed the alleged criminal activity. This includes providing Ms. Dunning's phone number, as well as her

---

[23] *See McKinney*, 107 A.3d at 1048; *Torres*, 534 F.3d at 211 (citing *U.S. v. Brown*, 448 F.3d 239, 249-50 (3d Cir. 2006)).

[24] The Court does note that the fifth factor regarding the tip's prediction of future events, weighs against an indicia of reliability in this case. The Court notes that the Informant did not provide any information as to Ms. Dunning's future movements nor did the Informant provide any information as to any future drug transactions that could be observed and corroborated. This will be discussed in more detail below with regard to the independent police investigation.

room number and the location of the heroin under her bed. In addition, the Informant told Trooper Hamilton that he had purchased heroin from Ms. Dunning at a specific time the night before and that Ms. Dunning had "re-up'ed her supply."

Looking next to the degree to which the tip was corroborated by independent police surveillance and information, the Court finds that this is a more difficult analysis, but ultimately weighs in favor of a finding of probable cause. A tip may be considered corroborated when it provides "accurate prediction of future movements" on the part of the defendant -- a factor admittedly not present here.[25] However, corroboration of even non-inculpatory portions of an informant's tip may strengthen an informant's reliability.[26] If an informant's tip is sufficiently corroborated, the tip may form the basis for probable cause, even if nothing is known about the informant's credibility.[27] This Court has previously indicated in its *State v. Bordley* decision that tips conferring information "discernible to any member of the public" have no genuine predictive value.[28] In this case, law enforcement officers corroborated details not discernable to any member of the public, including the fact that the phone number of the person texting the Informant about the drug transaction was in fact Ms. Dunning's, the

---

[25] *Holden*, 60 A.3d at 1116.

[26] *See Gates*, 462 U.S. at 244 (observing that if an informant is right about some things, he is likely correct about others) (citations omitted); *Jacoby v. State*, 571 A.2d 787, at *3 (Del. 1989) (Table).

[27] *Hubbard v. State*, 782 A.2d 264, at *4 (Del. 2001) (Table); *McAllister v. State*, 807 A.2d 1119, 1124 (Del. 2002) ("An informant's tip that is corroborated by independent police work can form the basis for probable cause, regardless of what is known about the informant's personal credibility or reliability.").

[28] *State v. Bordley*, 2017 WL 2972174, at *3 (Del. Super. July 11, 2017) (citing *Alabama v. White*, 496 U.S. 325, 332 (1990) (finding a tip's predictive value to be supportive of reasonable suspicion when "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.")).

exact number of the Hotel Room, and the fact that the vehicle in which Ms. Dunning was sitting was registered to her.

The analysis of the tip received in *Alabama v. White*[29] is instructive for the case at hand. In *White*, a tipster stated that the defendant would be leaving a specific apartment complex "at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case."[30] The officers immediately proceeded to the apartment complex and saw the defendant driving a vehicle matching the description directly to the predicted destination.[31] Although the *White* court considered it "a close case," the tip's prediction of the defendant's movements at a specific time, in a specific vehicle, and to a specific destination, followed up by independent police investigation, exhibited sufficient indicia of reliability to support reasonable suspicion. Although the *White* case involved movement of the defendant from one location to another, it also involved other facts about the defendant's vehicle and the destination that, like the information in this case, included specific details.[32]

In this case, there was no prediction of future actions on the part of Ms. Dunning. Officers did not conduct a controlled buy, nor did the Informant's tip predict Ms. Dunning's future movements at a specific time, or to a specific

---

[29] 496 U.S. 325 (1990).

[30] *Id.* at 327.

[31] *Id.*

[32] Although *White* involved the lesser standard of reasonable suspicion rather than probable cause, there are competing factors in this case weighing in favor of a finding of probable cause, including the fact that the tip in this case -- unlike that in *White* -- was not anonymous, and that this case involves a search warrant, which requires this Court to give deference to the issuing magistrate.

destination, or provide any information as to any future drug transactions that could be observed and corroborated. However, while this information would certainly have aided the magistrate in making the determination regarding probable cause, the Court notes that the job of the magistrate judge is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[33]

The sole responsibility of the reviewing court is to "ensure that the magistrate had a substantial basis for concluding that probable cause existed."[34] This Court must uphold the magistrate's finding if the affidavit on which it was based provided a substantial basis for finding probable cause.[35] The Court need not determine whether probable cause actually existed, but simply whether there was "a 'substantial basis' for finding probable cause."[36] Moreover, as previously noted, this Court has eschewed a hypertechnical approach to evaluating a search warrant affidavit in favor of a common-sense interpretation, bearing in mind that the court reviewing the search warrant owes deference to the issuing magistrate.[37]

Here, when viewed under a totality of the circumstances test, the search warrant affidavit clearly contained, within its "four corners," information from which the magistrate could reasonably conclude that it was probable that Ms.

---

[33] *Gates*, 462 U.S. at 238-39.
[34] *Id.* at 236.
[35] *Id.*
[36] *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993).
[37] *Tatman v. State*, 494 A.2d 1249, 1251–52 (Del. Super. 1985); *Jensen v. State*, 482 A.2d 105, 111 (Del. Super. 1984).

Dunning had been engaging in the sale of heroin at the Hotel Room and that evidence of illegal activity and contraband was likely to be discovered there.

The Court finds that the Informant's tip was independently corroborated by Trooper Hamilton, who "contacted [the Informant] as he was placing an order for heroin on his cell phone." Evaluating the search warrant affidavit under a common-sense interpretation, the Court finds that this presents direct evidence of an attempted drug sale between Ms. Dunning and the Informant while the Informant was in the presence of Trooper Hamilton. Moreover, the officers were able to confirm that the phone number that was texting the Informant about the sale of heroin did, in fact, belong to Ms. Dunning and that Ms. Dunning was staying in the specific hotel room identified through June 5, 2018. This was further corroborated when the officers observed Ms. Dunning outside the Hotel Room in a vehicle registered to her. Lastly, the Court finds that the tip was detailed and specific, particularly with regard to where the drugs were concealed.

Though this information did not predict future events that would allow the officers to test the Informant's knowledge or credibility, these details did provide the officers with strong assurances that the Informant had a sufficient basis of knowledge about Ms. Dunning's criminal activity. [38] Corroboration by subsequent independent police investigation is significant, and weighs in favor of finding probable cause based on the tip. Paying appropriate deference to the magistrate's determination, the Court finds that the magistrate had a substantial basis for concluding that probable cause existed.

---

[38] *See Jacoby*, 571 A.2d 787, at *3 (tip from anonymous informant, which was determined to support probable cause, was detailed and specific, including "particularly detailed fact of where the drugs were concealed," and although corroborated by observations of predicted future movements, was also "partially corroborated when [law enforcement] identified the car parked in front of [the defendant's] house.").

Therefore, based on a totality of the circumstances, the Court finds that the tip is reliable, that an independent police investigation corroborated the Informant's tip, and that probable cause existed to justify the search of the Hotel Room.

**WHEREFORE**, for the foregoing reasons, Ms. Dunning's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Noel Eason Primos

NEP/wjs
oc.  Prothonotary
xc.  Zachary A. George, Esquire
     Gregory R. Babowal, Esquire