*212 OPINION OF THE COURT
Meyer, J.
This case involves the unusual twist that by coincidence one of the police officers involved was the son of the victim of the robbery and mother and son have testified somewhat differently concerning identification of defendant Harris.
Having pleaded guilty to second degree robbery, Harris appealed asserting as grounds for reversal: (1) that the court should have ruled out any in-court identification of defendant by the victim, because the identification procedures were suggestive and because the victim was influenced by conversations with her son; (2) that statements he made to the police should have been suppressed as the product of a custodial interrogation conducted without benefit of Miranda warnings; and (3) that two sticks Harris was carrying and which were taken from him by the police should have been suppressed because the seizure was unlawful. The Appellate Division unanimously affirmed (60 AD2d 797). We reverse, vacate the plea and remit for further proceedings because defendant’s statements to the police should have been suppressed, but do not disturb the other suppression rulings.
On December 30, 1974 at about 10:30 p.m. three men, each carrying a stick, came to the front door of the residence of Mrs. Celestine Turner and forced their way inside. One of the men, with the stick raised above his head, ordered her to keep her head down; the other two looked for valuables. Ultimately the three men took $5 and a television set from her home. At the Wade hearing Mrs. Turner testified that the entire incident lasted for about 10 minutes, and that she had observed defendant for that period of time. On cross-examination, however, she conceded that she had defendant’s face in view for only seconds at a time, on only three occasions, a total, so the jury could have found, of less than 30 seconds.
About half an hour later Police Officer Leon Clark (Mrs. Turner’s son) and fellow Officers Carlos Antonino and Anthony Binculli were on motor patrol in Queens County when Clark noticed three men, two of whom were carrying a television set between them while the third carried two gray sticks of about three feet in length. Officer Clark emerged from the patrol car, identified himself as a police officer and approached the three men. The two men carrying the television set immediately put it down and fled. Officer Clark gave chase but *213 the two men eluded him. Clark then returned to the patrol car and observed that defendant Harris was being detained by Officers Antonino and Binculli. Harris was placed in the patrol car and the police took possession of both the television set and the two gray sticks.
Although no Miranda warnings were given, defendant was questioned as to the identity of the two men and where the television set had come from. Defendant stated that he knew only one of the two men, and him only by the first name of "Billy”, and that he did not know where the two men had gotten the television set. Unaware that Clark’s mother had been robbed, the officers, with Harris in the car, cruised the neighborhood for signs of a crime. None being observed, they proceeded to the precinct station, where the television set and sticks were vouchered, a "stop and frisk” form was filled out, and Harris was released.
When Clark arrived home at 4:00 a.m. the next morning and learned that his mother had been robbed, he went directly to her house. She related the details of the crime, and he told her about the three men he had stopped while on duty, and the television set he had taken from them. Mrs. Turner having ventured that, because of its makeshift wire hanger antenna, she would be able to identify the set if it were hers, Clark took her to the precinct where she identified the set as her own.
The following morning when Clark returned to his mother’s house, she showed him a stick which she had found on her front stoop, which was similar to the sticks defendant Harris had been carrying. They then proceeded to the precinct so she could look at photographs for purposes of identifying any of the three men. Mrs. Turner was given three sets of six photographs to examine, each of which contained a picture of defendant Harris and five pictures of other men. She selected a picture of Harris, but stated that though he looked familiar she could not make a positive identification. At the Wade hearing Mrs. Turner testified that on the way home from the precinct her son told her that she had selected one of the men he had stopped the night before. Officer Clark’s testimony at separate hearings can be understood as saying both that he did not discuss the defendant with his mother before the lineup was held and that he did. The hearing court found that the pretrial identification procedures were "fair, non-suggestive and made independently by the witness; and, that at no *214 time did the police suggest or intimate to the witness that defendant’s photograph was one of the photographs shown to her nor did they influence the complainant during her viewing of the lineup.” In any event, Mrs. Turner related at the Wade hearing that several days after the photo identification she became convinced that defendant was one of the culprits. At the lineup subsequently conducted, Mrs. Turner identified defendant as one of the robbers.
Defendant having moved to suppress the statements to the police, the sticks taken from him and any identification of him by Mrs. Turner, a combined Wade-Mapp-Huntley hearing was held after which the court filed a memorandum, incorporating its findings of fact and conclusions of law, which denied suppression. As to Mrs. Turner’s in-court identification of defendant, the court found, as noted above, that the pretrial identification procedures were not suggestive or unfair. It likewise refused to suppress the two sticks, concluding that they were the fruits of a search incident to a lawful arrest. On suppression of defendant’s statements to the police, the court again ruled in favor of the People, but its reason for doing so is not entirely clear. Perhaps it confused defendant Harris with the other two defendants, for the court stated explicitly at the beginning of the memorandum that "Harris was not advised of his rights while in the patrol car”, but ultimately concluded that "The defendants were read their Miranda warnings by the police prior to their giving any statement to any or either of them, and they acknowledged that they understood what was read to them in each instance”, and denied Harris’ motion to suppress the statements which he made to the police while in the police car.
Mindful that, with rare exception, this court may review only questions of law, we are constrained to accept the conclusion that the identification procedures were not suggestive. There was conflicting testimony as to whether Officer Clark confirmed his mother’s recognition of defendant by telling her that she had selected one of the men he had stopped. That conflict was resolved in favor of the People and we cannot say as a matter of law that so construed, the evidence did not support a conclusion that the pretrial identification procedures were fair (cf. People v McCullers, 33 NY2d 806).
 Nevertheless, the defendant must be afforded an opportunity to reconsider his guilty plea, for the statements that he made to the police in the police car should have been *215 suppressed. It is now well settled that unless a police officer administers Miranda warnings to a suspect in his custody, any statement elicited from the suspect cannot be admitted against him in a subsequent criminal trial (Miranda v Arizona, 384 US 436; People v Rodney P. [Anonymous], 21 NY2d 1). Both the testimony and the Trial Judge’s memorandum make clear that Harris was given no Miranda warnings before he made the statement he sought by his motion to suppress. Moreover, there can be no question but that Harris was "in custody” at the time the statement was made. The standard to be applied is whether a reasonable person, innocent of any crime, would have felt free to leave (People v Rodney P. [Anonymous], supra). Any doubt Harris may have held about his freedom to leave was dispelled early on, for when his companions put down the television set and fled, Officer Clark immediately gave chase. Clark testified that when he returned, he noticed that Harris was "being detained by my partner” [emphasis supplied]. Harris was then placed in the car, and the sticks were taken from him. Thus, whether the police formally took defendant into custody or simply detained him pending their investigation, it is clear that the subsequent questioning was a custodial interrogation, and that Miranda warnings should have been given.
The more difficult question is whether this error so prejudiced the defendant as to require that his guilty plea be vacated. In People v Grant (45 NY2d 366, 379) we recognized the inherent difficulty in attempting to decide whether an erroneous pretrial ruling contributed to a defendant’s decision to plead guilty. Indeed, we stated that "when a conviction is based on a plea of guilty an appellate court will rarely, if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant’s decision, unless at the time of the plea he states or reveals his reason for pleading guilty”. (Id., at pp 379-380.) While Harris’ statement to the police was not particularly damning, a jury could reasonably interpret it as inculpatory since it connected defendant to the other two men carrying the television set. Since it cannot be said with certainty that the erroneous ruling played no part in defendant’s decision to plead guilty, the plea must be vacated and further proceedings had.
Defendant’s final argument for reversal is that the court erred in failing to suppress the sticks taken from him on the night of the crime. The Constitution does not require that *216 there be probable cause to arrest in order for the officers to take possession of the three-foot sticks defendant was carrying (Terry v Ohio, 392 US 1, 27; Dunaway v New York, 442 US 200; Pennsylvania v Mimms, 434 US 106; Adams v Williams, 407 US 143), nor does our statute. CPL 140.50 authorizes temporary detention when a police officer reasonably suspects that a person has committed a felony or a misdemeanor as defined in the Penal Law. Officer Clark had seen defendant Harris beckon to the two men carrying the television set and they had in fact crossed over to where Harris was when Clark accosted them, whereupon the two men carrying the television set put it down and fled. Under the circumstances there was reasonable suspicion that Harris was involved with them in the commission of a felony or misdemeanor. The officers were, therefore, authorized both by statute and under the Constitution to take possession of the sticks Harris carried, and which could pose a danger to them if he became violent, for their own protection while questioning him.
While defendant was entitled under subdivision 3 of the section to return of the sticks upon completion of the officers’ questioning of him, the failure of the officers to return* them was a violation of statute, not of a constitutional right. On the facts of this case the exclusionary rule is not implicated and suppression was not warranted.
For the foregoing reasons, the order of the Appellate Division should be reversed, the judgment and plea vacated, the statement should be suppressed and the case remitted to Supreme Court, Queens County, for further proceedings on the indictment in accordance with this opinion.

 Since the instant motion is for suppression not for the return of the sticks, it is difficult to understand the reference in the partial dissent to any property being "confiscated or retained”.