THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARICE CLARK, Defendant-Appellant.

First District (3rd Division)   No. 78-1677

Opinion filed May 14, 1980.

Howard T. Savage, of Chicago (Howard O. Edmonds, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Linda Dale Woloshin, and Robert J. Kaiser, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Defendant, Clarice Clark, was convicted of the murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1) of her husband, Sylvester Clark, in a jury trial, and was sentenced to a term of 14 years to 14 years and one day. Before trial, defendant filed a motion to suppress statements that she made to the police at the scene of the incident. The motion was denied. On appeal, defendant contends that the statements were obtained in violation of her constitutional rights and should have been suppressed. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) She also claims that she was not proved guilty beyond a reasonable doubt. We reverse and remand for a new trial.

At the hearing on the motion to suppress, a police officer testified that on May 21, 1977, at approximately 2 a.m., he and another officer received a call over their police car radio, stating that there was an accident at 47th and Langley Streets in Chicago. The officers proceeded to that location. Upon arrival at the scene, the officer observed a fire ambulance, an automobile with a man slumped over in the front seat, and a crowd of people gathered around the automobile. He also saw two women standing on the sidewalk close to the passenger side of the automobile, one of whom was the defendant. After bystanders pointed out that defendant was the wife of the man in the automobile, the officer approached her and confirmed that she was the wife of the injured man. He then asked defendant if she would sit in the back seat of the police car. Defendant was crying and emotionally upset. A woman friend of

defendant obtained permission from the officer to accompany her into the police car.

Once the women were seated in the car, the officer asked defendant, "What happened?" She responded, "I shot my husband." At this point, the officer asked the other woman to leave the police car. No *Miranda* warnings were given. The woman left the car, and the officer asked defendant, "What do you mean you shot your husband? What happened?" According to the officer, defendant then explained that she and her husband had been to a graduation party for their daughter. They had an argument about him leaving the party early. They also had an altercation in the car, and she left the car and went into a tavern. When she returned to the car, she found her gun on the front seat. The officer also testified that defendant explained that her husband had taken the gun out of her purse, unloaded it, and placed it on the seat between them. Defendant told the officer that she picked up the gun, pointed it at her husband, and pulled the trigger.

Defendant moved to suppress certain statements made to the police officer. The trial court denied the motion. Defendant argues that the statements made after she admitted that she shot her husband were obtained in violation of her constitutional rights and should have been suppressed. *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

■■ In *Miranda*, the court held that statements obtained from a defendant during custodial interrogation may not be used by the prosecution unless certain procedural safeguards effective to secure the privilege against self-incrimination are employed. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) However, a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that the questioning took place in a coercive environment. Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in a police car or station house, or because the person being questioned is one whom the police suspect. *Miranda* warnings are required only when there has been such a restriction on a person's freedom as to render him, in effect, in custody. It was that sort of coercive environment to which *Miranda*, by its terms, was made applicable, and to

which it is limited. See *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 713; *People v. Wipfler* (1977), 68 Ill. 2d 158, 169-70, 368 N.E.2d 870, 874.

■▮ The determination as to whether a person is, in effect, in custody, depends on an objective evaluation of the circumstances surrounding the interrogation. (See *Wipfler*, 68 Ill. 2d 158, 170, 368 N.E.2d 870, 874-75; *People v. Hentz* (1979), 75 Ill. App. 3d 526, 530, 394 N.E.2d 586, 589; *People v. Kennedy* (1978), 66 Ill. App. 3d 267, 277, 383 N.E.2d 713, 722.) The test is whether, under the circumstances, a person would reasonably believe that he was not free to leave the scene of the questioning, so that he was deprived of his freedom of action in a significant way during the questioning. (See *People v. Snow* (1976), 39 Ill. App. 3d 887, 891, 350 N.E.2d 875, 878; *People v. Helm* (1973), 10 Ill. App. 3d 643, 648, 295 N.E.2d 78, 82.) Thus, *Miranda* warnings are not necessary if a person is answering questions voluntarily when he is not in custody and there is no restriction on his freedom to leave the scene of the questioning. Nor are *Miranda* warnings necessary for general on-the-scene questioning regarding facts surrounding a crime, or other general questioning of persons in the fact-finding process. *Miranda*, 384 U.S. 436, 477, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629; *People v. Parks* (1971), 48 Ill. 2d 232, 237, 269 N.E.2d 484, 487; *People v. Gan* (1979), 75 Ill. App. 3d 72, 75, 394 N.E.2d 611, 613.

■▮ Here, defendant was asked to sit in the police car when the officer determined that she was the wife of the injured man. She was accompanied by a woman who had been standing with her. When the women were seated in the car, the officer asked defendant what happened. She answered that she shot her husband. There was nothing improper about this inquiry. This single question qualified as general on-the-scene questioning; thus, defendant's response was not the product of custodial interrogation. (See *People v. Tripkovich* (1972), 6 Ill. App. 3d 37, 45-46, 284 N.E.2d 323, 329.) But, the police officer went beyond this initial inquiry. We find it significant that once defendant admitted that she shot her husband, the officer asked defendant's friend to leave the car. After she left, he continued the questioning, without giving the defendant *Miranda* warnings, even though he was then aware that defendant shot her husband. At this point, the investigation obviously focused on her conduct involving the shooting. Nevertheless, he again asked her what happened, and she detailed the events of the occurrence.

The State claims that the questioning was routine and merely investigatory inquiry at the scene of the incident. We disagree. Under the circumstances, *Miranda* warnings should have been given, if the questioning was to continue, after defendant told the officer that she shot her husband and the officer asked her friend to leave the car. The second

question went beyond general on-the-scene inquiry and took place when a person would reasonably have believed that he was not free to leave the scene of the questioning. (*Cf. People v. Kennedy* (1978), 66 Ill. App. 3d 267, 277-78, 383 N.E.2d 713, 722.) Thus, the questioning occurred when defendant was deprived of her freedom in a significant way. Therefore, the statements obtained after the officer asked what happened for the second time should have been suppressed. The error in denying the motion to suppress may have significantly affected the defendant's trial strategy, particularly her decision to testify in her own defense, and perhaps the jury's verdict. Consequently, we cannot say that this error was harmless, and we reverse and remand the case for a new trial.

■■ Defendant also argues that she was not proved guilty beyond a reasonable doubt. Although we reverse and remand the case on other grounds, we must address the issue, since it is raised by defendant. *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375; *People v. Thompson* (1979), 75 Ill. App. 3d 901, 905, 394 N.E.2d 422, 426.

At trial, defendant testified that she and her husband had attended the graduation of their daughter. She had placed a revolver in her purse for protection. While at a graduation reception, her husband told her that he was going home. Prior to leaving the reception, defendant telephoned Pufo's Lounge and learned that her husband was there. After the reception, she was driven to Pufo's Lounge by her son-in-law; she went in and talked to a friend. Her husband came up and told her that he was going to wait in the car. Defendant testified that she and her husband had not argued.

Defendant stated that she went to the car, placed her purse on the front seat, and then returned to the tavern to get a plate of refreshments she thought she had left behind. Discovering that the tavern was closed, she went back to the car. Defendant's husband told her that he had taken the bullets out of her gun. She again stated that they did not argue. She testified that, as she picked up the gun, her husband grabbed the barrel. She pulled the gun back toward her and then heard a shot. She shook her husband to get him to speak to her. When he did not respond, she ran to call an ambulance.

According to defendant, the police officer came up to her and asked if she was the victim's wife. He then told her to sit in the police car. She did not have a conversation with him; she only stated to him that she was the wife of the injured man. She testified that after the officer returned to the car, he asked her friend to leave the car. The officer's testimony at trial was basically the same as his testimony at the hearing on the motion to suppress.

Defendant contends that the evidence establishes that the State has not proved beyond a reasonable doubt that she acted intentionally or

knowingly. She argues that the shooting was accidental. Specifically, she claims that the gun went off as her husband grabbed the gun and she pulled it back toward her. However, at trial, defendant's testimony as to the occurrence was impeached by the rebuttal testimony of a police officer who was in the police car with defendant and a police officer that spoke to defendant at the hospital. The officers testified that defendant previously stated that she pointed the gun at her husband and pulled the trigger. (See *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (approving the use of statements obtained in violation of *Miranda* for impeachment purposes).) Under the circumstances, the jury could have rejected defendant's trial testimony of the incident and concluded that the shooting was not accidental.

Moreover, the jury could have concluded that the physical evidence and circumstances failed to support defendant's theory that the shooting was accidental. For instance, it could have determined that defendant's version of what occurred was inconsistent with the victim's wounds. According to the record, the bullet entrance wound was on the right rear portion of the head, approximately one inch above the ear. The bullet exit wound was between two and three inches above the left ear. Since the bullet apparently traveled from the right side to the left side of the victim's head, the jury could have concluded that the victim was not looking at the gun and, therefore, not holding onto the gun when it was fired. Thus, the jury could have decided that the shooting was not accidental based on the physical evidence and circumstances.

Accordingly, the jury could have concluded that the defendant was proved guilty beyond a reasonable doubt based on the competent evidence presented. This does not mean, however, that we are making a finding as to the defendant's guilt or innocence which would be binding on retrial. Our consideration of the sufficiency of the evidence and our conclusion, however, protects defendant's constitutional right against double jeopardy as mandated in *Taylor*. See *People v. Thompson* (1979), 75 Ill. App. 3d 901, 905-06, 394 N.E.2d 422, 426.

The case is reversed and remanded for a new trial for the reasons stated.

Reversed and remanded.

McNAMARA and SIMON, JJ., concur.