STATE of Maine

v.

**Frederick L. THURLOW.**

Supreme Judicial Court of Maine.

Argued March 5, 1981.

Decided July 16, 1981.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., William Darrow, Law Student Intern (orally), Portland, for plaintiff.

Glassman, Beagle & Ridge, C. Alan Beagle (orally), Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY and CARTER, JJ.

GODFREY, Justice.

Retried after our decision in *State v. Thurlow*, Me., 414 A.2d 1241 (1980), Frederick Thurlow was again convicted of burglary, 17–A M.R.S.A. § 401 (Supp.1980). He appeals on the ground that the court erred when, after a suppression hearing, it denied his motion to suppress and admitted in evidence a false exculpatory statement made by Thurlow at the scene of the crime. Thurlow contends that statement was involuntary and elicited by a police officer in violation of the procedures required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.

1602, 16 L.Ed.2d 694 (1966). We affirm the conviction.

## I.

At 1:30 a. m. on November 27, 1978, Thurlow and a companion were leaving a Portland tavern known as Leroy's Place through a back door when they were confronted by a Portland police officer. The tavern had closed at 1:00 a. m. Both men turned around and ran back into the tavern. In response to the officer's call for help on his car radio, Steven Robinson, another police officer on patrol in the area, drove his cruiser directly to Leroy's Place at high speed. As Officer Robinson approached Leroy's Place in his cruiser, he saw a man whom he later recognized as Thurlow standing by the front entrance of the tavern.

At the suppression hearing, only Officer Robinson testified about the details of his arrival at Leroy's Place and his subsequent encounter with Thurlow during which Thurlow made the statement he contends was admitted erroneously.

Robinson's testimony at the hearing can be summarized as follows: On November 27, 1978, in the early morning hours, Robinson heard a radio call for help from a fellow officer. The call for help informed Robinson only that a burglary was in progress at Leroy's and that a fellow officer was conducting an investigation. He responded by driving his cruiser at high speed to Leroy's Place on Forest Avenue. As he approached Leroy's, Robinson observed the appellant standing on the sidewalk at the front entrance. After making a rapid "U" turn Robinson parked his cruiser directly in front of the entrance and the appellant. Robinson left the cruiser from the door on the passenger side, nearer the appellant. As he left the vehicle, he recognized the appellant as a person whom he had arrested two months earlier for theft of an automobile. Although Robinson thought Thurlow might have "had something to do with the burglary" and intended to detain him if necessary, he knew that he did not have probable cause to arrest Thurlow. He thought Thur-

low might possibly be an owner of the tavern or "perhaps had some legal reason to be there." Accordingly, after stepping from his cruiser, Robinson tried to make his approach to Thurlow "as low key as possible." He did not draw his gun or touch or threaten Thurlow. Approaching the appellant, Robinson asked him what he was doing there. According to Robinson's testimony, Thurlow replied "that he had heard the alarm sounding and was watching the front while Officer Snow was in the back of the building."

Robinson was suspicious of the appellant's response because he knew the tavern did not have an alarm and doubted that the other officer would ask a civilian to watch the front entrance. Robinson then asked Thurlow to step inside Leroy's to verify his response. Thurlow agreed to do so and, according to Robinson, was "very cooperative." Once inside, Thurlow was identified by the other officer as a suspect and was arrested and "given his *Miranda* rights" while the two policemen searched the tavern for his companion. Thurlow's false exculpatory response explaining his presence at the entrance to Leroy's Place is the only statement in issue on this appeal. On the basis of the testimony summarized above, the Superior Court denied the appellant's motion to suppress the exculpatory statement.

## II.

Thurlow contends that the Superior Court applied erroneous legal principles in ruling on the motion to suppress and that the evidence did not provide rational support for the court's findings. He seeks to present two constitutional issues: first, whether the police complied with the requirements of *Miranda v. Arizona*, and, second, whether Thurlow's statement to Officer Robinson was obtained involuntarily in violation of his due process rights. *See State v. Melvin*, Me., 390 A.2d 1024, 1030 (1978).

### A. Compliance with Miranda v. Arizona

1. Appellant argues that the trial justice applied erroneous legal principles in decid-

ing whether the *Miranda* warnings should have been given because the findings the justice explicitly made on the record referred to the question of the officer's "focus" on the defendant, a factor appellant claims is irrelevant and inconclusive in determining whether the appellant's *Miranda* rights were violated.

In denying the motion to suppress, the trial justice stated his conclusion that investigation had not yet focused on Thurlow at the time Officer Robinson asked him what he was doing there. The justice also went on to make clear that his ruling concerned only the officer's first question to Thurlow and Thurlow's response. Further, the court intimated that its ruling might possibly have been different with respect to statements made after Thurlow responded to Officer Robinson.

■ Contrary to appellant's contention, the trial justice's references to the police officer's lack of focus on the appellant as a suspect were not irrelevant or improper. Whether investigation by the police has focused on the defendant as a person suspected of committing the crime under investigation is one circumstance to be weighed in determining whether an investigation is custodial within the meaning of *Miranda v. Arizona, supra.* Though not a controlling factor in establishing the existence of custody, focus is at least relevant. *State v. Preston,* Me., 411 A.2d 402, 405 (1980); *State v. Inman,* Me., 350 A.2d 582, 598 (1976). *Accord, Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *United States v. Hall,* 421 F.2d 540, 544–45 (2d Cir. 1969); *Moore v. Ballone,* 488 F.Supp. 798, 804–05 (E.D.Va.1980); *Hunter v. State,* 590 P.2d 888, 893 (Alaska 1979); *State v. Costa,* 228 Kan. 308, 311–12, 613 P.2d 1359, 1364 (1980).

The presiding justice's comments about the focus of the investigation were made after counsel for the state and for the defendant had argued the motion to suppress on the *Miranda* issue of whether Thurlow was "in custody" at the time Robinson asked Thurlow what he was doing there. It is clear from the record that the justice was

responding to the main argument counsel had made relating to the critical issue of whether Robinson's question amounted to "custodial interrogation" in the sense of *Miranda.* In the context of counsel's argument, the record leaves no doubt that the justice resolved that critical issue in the negative on the ground that Thurlow was not "in custody" at that time. Because both custody and interrogation must be present before the *Miranda* warnings are required, *State v. Preston, supra* at 405, the trial justice's finding that custody did not exist was sufficient by itself to sustain his ruling if the evidence generated at the suppression hearing provided rational support for that finding.

■ 2. In the context of on-the-scene investigations where police officers often ask questions of bystanders, the United States Supreme Court has recognized that *Miranda* warnings are normally unnecessary. *Miranda v. Arizona, supra,* 384 U.S. at 477, 86 S.Ct. at 1629. Accordingly, this Court has held that "the facts of each particular case must be closely examined to determine whether the line between 'general investigation' and 'custodial interrogation' has been crossed." *State v. Inman, supra* at 597–98. *See also People v. Clark,* 84 Ill.App.3d 637, 40 Ill.Dec. 100, 405 N.E.2d 1192 (1980); *State v. Price,* Me., 406 A.2d 883 (1979).

Appellant argues that the evidence does not provide rational support for the trial court's conclusion that appellant's statement was not made in the course of custodial interrogation. Custody exists when a person has been "deprived of his freedom of action in any significant way." *State v. Inman, supra* at 597. At the suppression hearing, defense counsel presented his argument on the basis that the presiding justice had to reach his conclusion beyond a reasonable doubt, and nothing in the record suggests that the justice applied a lesser standard. Accordingly, under the principle of review set forth in *State v. Collins,* Me., 297 A.2d 620, 625 (1972), as it applies to the issue of custody in this case, this Court must decide whether the evidence of record

provided rational support for the trial court's conclusion that, beyond a reasonable doubt, the appellant did not utter the statement while deprived of his freedom of action in any significant way.

In making a determination on the issue of custody, the trial justice must assess the sufficiency of the evidence objectively from the perspective of a reasonable person in the defendant's position. *State v. Inman, supra* at 598. *Accord, United States v. Hall, supra* at 544; *Hunter v. State, supra* at 895; *People v. Arnold*, 66 Cal.2d 438, 448, 58 Cal.Rptr. 115, 121, 426 P.2d 515, 521 (1967); *People v. Harris*, 48 N.Y.2d 208, 215, 422 N.Y.S.2d 43, 45, 397 N.E.2d 733, 736 (1979) ("a reasonable person, innocent of any crime"). Such an objective approach faithfully serves the purposes of the *Miranda* rule by strengthening the suspect's protection from coercion, *see Hunter v. State, supra* at 895, while accommodating the need of law enforcement officers to distinguish situations in which the *Miranda* warnings are required from situations in which they are not. *See Rhode Island v. Innis*, 446 U.S. 291, 303, 100 S.Ct. 1682, 1690–1691 (1980).

Turning to the record before us and deferring to the trial justice's opportunity to appraise the credibility of the testimony, *see State v. Preston*, Me., 411 A.2d 402, 405 (1980), we conclude that the evidence provides rational support for the justice's finding beyond a reasonable doubt that the appellant was not in custody or could not reasonably have felt deprived of his freedom of action in any significant way. While the manner of Officer Robinson's approach in the police car was somewhat aggressive, an innocent person would have

reasonably concluded that the officer was responding to a report of criminal activity or a call for help. Indeed, that the officer in this case was in fact responding to a call for help suggests the importance of construing *Miranda* in a way that does not hamper the ability of law enforcement officials to *perform their duties effectively and responsibly.* Spontaneous encounters with potential suspects where preliminary questioning is necessary are bound to occur in the course of on-the-scene investigations.[1] *See State v. Inman*, Me., 350 A.2d 582, 597 (1976). But such encounters are not perforce custodial. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). As the Illinois Court of Appeals has observed, "a non-custodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that the questioning took place in a coercive environment", for any interview of a suspect by a police officer "will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *People v. Clark*, 84 Ill.App.3d 637, 40 Ill.Dec. 100, 101, 405 N.E.2d 1192, 1193 (1980).

After Officer Robinson parked the police cruiser, the evidence adequately supports the inference that in the moments immediately before the appellant made the incriminating statement, police conduct had not become sufficiently aggressive or intimidating to create the type of coercive, confining environment the notion of *Miranda* custody connotes. The officer was alone. *Cf. State v. Craney*, Me., 381 A.2d 630, 632 (1978) (number of police officers present relevant

1. Many jurisdictions have recognized the importance of reconciling the mandates of *Miranda* with the practical necessity of allowing preliminary on-the-scene questioning of suspects. *See, e. g., People v. Manis*, 268 Cal.App.2d 653, 665, 74 Cal.Rptr. 423, 430 (1969):

When circumstances demand immediate investigation by the police, the most useful, most available tool for such investigation is general on-the-scene questioning, designed to bring out the person's explanation or lack of explanation of the circumstances which

aroused the suspicion of the police, and enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges. *See also State v. Salit*, 613 P.2d 245 (Alaska 1980); *State v. Dickey*, 125 Ariz. 163, 608 P.2d 302 (1980); *People v. Carter*, 108 Cal.App.3d 127, 130–31, 166 Cal.Rptr. 304, 306 (1980); *People v. Clark*, 84 Ill.App.3d 637, 40 Ill.Dec. 100, 405 N.E.2d 1192 (1980); *State v. Costa*, 228 Kan. 308, 613 P.2d 1359 (1980).

to custody). As he approached the appellant after stepping out of his cruiser, the officer did not physically restrain the appellant. *Cf. State v. Hudson*, Me., 325 A.2d 56, 59 (1974) (physical restraint relevant to custody). He did not draw his pistol. Rather, uncertain of whether Thurlow was criminally involved, he approached the appellant in a "low-key" manner and asked appellant what he was doing there. This evidence provides rational support for the trial justice's decision that the appellant was not in custody at the time he made the incriminating statement at issue.

Although some of the testimony at the suppression hearing might have tended to support a conclusion contrary to that reached by the trial justice, appellant's argument on appeal gains nothing from that fact. That a person is a suspect, though relevant to focus and thus to custody, does not conclusively establish custody. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977); *United States v. Hall*, 421 F.2d 540, 545 (2d Cir. 1969); *People v. Clark*, 84 Ill.App.3d 637, 639, 40 Ill. Dec. 100, 102, 405 N.E.2d 1192, 1194 (1980). Neither does the fact that the officer knew Thurlow from a previous arrest. Finally, the officer's testimony to the effect that he would have detained Thurlow if he had attempted to leave is immaterial to our inquiry, limited as it is to assessing the environment created by the police officer in the brief moments immediately before the appellant's utterance of his statement. *See State v. Hall, supra* at 546.

Because the record contains evidence rationally supporting the justice's conclusion, beyond a reasonable doubt, that Thurlow was not in custody at the time Robinson asked the question, we conclude that Thurlow's *Miranda* rights were not violated.

**2.** Defense counsel's written motion requested the court to suppress all statements made to the officer because "[t]he statements given by the defendant were given involuntarily and were obtained in violation of his 'Miranda rights.'" Before argument, defense counsel described his motion in the following terms:

### B. *Voluntariness of the Statement*

■ The trial court did not err in concluding that Thurlow's statement was voluntary. Applying the standard of review articulated by this Court in *State v. Collins, supra,* and noted above, we conclude that the record generated at the suppression hearing provides rational support for the trial justice's conclusion that appellant's statement was voluntary beyond a reasonable doubt. *See State v. Smith*, Me., 415 A.2d 553 (1980); *State v. Catlin*, Me., 392 A.2d 27 (1978); *State v. Farley*, Me., 358 A.2d 516 (1976).

### III.

■ In his reply brief, appellant contends, "The judge did not in any manner address the issue of voluntariness [of Thurlow's false answer to Robinson] raised at the hearing in both the written motion and by counsel setting forth [orally] the grounds for the motion." Appellant is apparently suggesting that the trial court's failure to make an explicit finding of voluntariness on the record is by itself reversible error. We find no merit in this argument.

In *Sims v. Georgia*, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967), the United States Supreme Court declared that although "the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." *See State v. Smith*, Me., 415 A.2d 553, 558 (1980). We think the record clearly shows the justice concluded that Thurlow's statement was voluntary.

The record shows that defense counsel's written motion and preface to his oral argument were based on both due process voluntariness and *Miranda* grounds.[2] Under Maine and federal law, the motion to suppress ought to have been granted if either

[DEFENSE COUNSEL]: Your Honor, the defendant has brought this motion on the grounds as set forth, that there exists, under the requirements of *Miranda vs. Arizona*, and the 14th amendment, the requirement that the statement given be voluntary, and also that certain rights known as *Miranda* rights, are given.

the statement was involuntary or *Miranda* procedures were violated. Conversely, only if the trial justice found that the statement was voluntarily made and that *Miranda* procedures were properly observed could the motion to suppress be denied. The record further indicates the court denied the motion to suppress in response to defense counsel's motion and after a hearing that otherwise fully complied with the mandates of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and Maine Rule of Evidence 104(a) and (c). Unlike more complex cases in which the court must assess the admissibility of numerous statements by the accused made at different times, *see, e. g., State v. Smith, supra*, in the instant case the admissibility of only one statement was considered by the Superior Court at the suppression hearing. In such circumstances, the trial justice's conclusion that the statement was voluntary appears "from the record with unmistakable clarity." *See Mincey v. Arizona*, 437 U.S. 385, 397, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 n. 12 (1978); *State v. Smith, supra* at 558.

The entry is:

Appeal denied.

Judgment of conviction affirmed.

All concurring.