THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRIAN W. ROGERS, Defendant-Appellee.

Second District No. 2—91—0316

Opinion filed June 9, 1993.

Roger T. Russell, State's Attorney, of Belvidere (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

David H. Towns and Joseph A. DiCaprio, both of Belvidere, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

The State appeals the order of the trial court suppressing the statements of defendant, Brian Rogers. He was indicted for the aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)) of his stepdaughter, A.Z., six years prior to the indictment. The issues on appeal are whether defendant's statements were involuntary because the interrogation was custodial; whether he was denied the right to counsel during the interrogation; and whether his confession was otherwise involuntary because he was suffering from anxiety and depression. We affirm.

Prior to defendant's arrest, he went to the Belvidere police department and made a confession. During the criminal proceedings, defendant moved to suppress this confession. He alleged that he was not informed of his rights, that the confession was secured in violation of his constitutional rights, and that his confession was involuntary.

Detective Joe Gough of the Belvidere police department testified that at 7 p.m. on April 19, 1990, defendant came to the public safety building to make a statement. When Gough had called defendant and his wife earlier that evening, Gough knew A.Z. was in protective custody. Gough told defendant's wife that her son was going to be investigated by the Department of Children and Family Services (DCFS). Gough was not sure if he told her defendant was going to be arrested. The record shows contradictory testimony on the part of Gough as to whom he actually related this information. In his testimony before the grand jury, Gough testified that he "got in contact with Brian Rogers at his residence," whereas in his police report and testimony at the suppression hearing, eight months later, Gough testified that he spoke with Mr. Rogers' wife.

When defendant arrived at the station by himself, Gough led him to the detective's office and read him the *Miranda* rights. Defendant signed a form that he understood the rights, but he still wanted to talk to the police. He placed his initials next to each statement of a right. Defendant sat in a chair to the right side of the desk. According to Gough, before he could get a note pad, defendant started talking about what happened between him and A.Z. and his other stepdaughter, K.Z. Gough took notes in longhand, and defendant later initialed the pages. Defendant was talking very fast, but Gough wrote what he could. Gough had to tell defendant to pause so that Gough could write everything down. At one point, defendant corrected what Gough wrote. Defendant wrote the final paragraph in his own hand and signed the whole statement.

The interview lasted 1½ to 2 hours. Defendant did not ask for any food or drink or ask to leave. Gough thought defendant was upset. He had tears in his eyes but was not crying. He had occasional minor mood swings. Gough testified he did not threaten to take defendant's children or send him to jail if he did not make a statement. After he signed the statement, defendant went home. The room was in a secure area of the police station to which only officers had access. During the interrogation, Deputy Chief Bowley was in and out of the room several times.

Gough denied defendant requested an attorney but did admit that he told defendant that whether an attorney would be appointed was to be decided by the court. Gough told him that an attorney would be provided only after an appearance in court and not at the police station during questioning. Gough denied that he stated that everything would be easier for defendant if he confessed. Gough denied telling him that if he made a statement DCFS was unlikely to take his son away because a confession would make defendant appear sincere.

Gough testified defendant made several changes in direction during the course of the conversation. Some of his sentences were incomplete and disjointed. Defendant was concerned about his son. The written statement makes a specific reference to the fact that defendant had not touched his son.

Defendant testified that Gough informed him that he had a right to an attorney. Defendant asked for one, but Gough told him that he was not sure if defendant would be arrested and that only if he were arrested and appeared in court would an attorney be appointed. According to defendant, Gough also told him that he was better off without an attorney because attorneys think they are good if a client gets only six years' imprisonment. Defendant testified that he then told Gough that he did not want to make a statement but Gough continued to interrogate him. Defendant asked for the attorney after signing the *Miranda* form.

Defendant testified he was very confused throughout the interrogation. Gough told him that if he made a confession and stated that he had not abused his son then DCFS would not take the son away. Defendant felt much stress. He did not remember reading the *Miranda* form as the words on the page seemed extremely small and seemed to move around the page. He did not remember signing the statement. During the questioning, Gough coached him by reciting excerpts from the other reports written against defendant. During the interrogation, defendant felt like he was going to die. After Gough refused the request for an attorney, defendant continued to talk be-

cause Gough told him to talk. Defendant knew to ask for an attorney because he saw actors on television dramas ask for counsel, but he did not know what to do when the request was denied because he was not aware of any actor's request being refused; he did not know he should stop talking. Defendant had been treated for anxiety attacks in the years before his arrest. After the interrogation, defendant's doctor referred him to a psychiatrist.

Defendant also called Dr. Anthony B. D'Souza to testify. He was a psychiatrist who had been treating defendant for eight months. He was treating defendant for anxiety and depression and had prescribed Desyrel and Xanax. In D'Souza's opinion, defendant did not relate well to stress, and this condition affected his ability to understand his legal rights. D'Souza believed defendant had exhibited symptoms of stress by his tearing and crying, using disjointed sentences, and changing subjects. An overwhelming concern for his son would trigger an anxiety episode. D'Souza thought that such anxiety would affect his ability to waive his legal rights for fear of losing his son or going to jail. Defendant probably had not been able to affirmatively assert his rights, and a strong authority figure would probably have been able to lead him to give a statement. Defendant's mental condition affected his ability to voluntarily and intelligently waive his rights.

D'Souza admitted that a person is not mentally ill merely because he has tears, makes disjointed sentences, and rambles. When the doctor first met defendant, he had been arrested, and that could cause stress, too. D'Souza was aware that defendant had much to gain from a ruling that his waiver of rights was involuntary, but the doctor persisted in his opinion. The doctor acknowledged that he was determining someone's mental state at an occasion when the doctor had not observed him, and the doctor admitted that he might have been fooled by other patients. However, based on his observations and other records, the doctor opined that defendant had not waived his rights voluntarily and intelligently. His opinion was also based on information supplied by defendant. The doctor believed that because any accused has the right to counsel, for a person to waive the right generally is a psychotic act; not all such people need psychiatric treatment, but one must examine why someone would refuse legal counsel. The doctor did not say that all waiving defendants were psychotic, but this defendant had waived his rights under an extreme amount of stress, which was more than a usual defendant bore because this defendant suffered from anxiety and depression.

Besides using defendant's statements, D'Souza relied on the report from the referring physician and his own direct observations when forming his opinion. Defendant had a history of depression prior to his meeting with D'Souza. Defendant's type of depression would occur off and on throughout the patient's adult life.

The trial court reviewed the transcript of the hearing prior to rendering its decision. The trial court noted some of Detective Gough's statements and concluded that Gough gave the *Miranda* warnings because defendant was in custody. The court stated that defendant felt like he was in custody. The court said defendant did ask for an attorney but was told one would not be appointed for him until he appeared in court. The trial court suppressed the statement.

The State argues the trial court erred in suppressing the confession. Defendant argues that the waiver of *Miranda* rights was not knowingly and voluntarily made, that the confession was not voluntary, and that the detective violated his rights by continuing the interrogation after defendant requested counsel. A confession made in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, is presumed involuntary. (*Oregon v. Elstad* (1985), 470 U.S. 298, 317, 84 L. Ed. 2d 222, 237, 105 S. Ct. 1285, 1297.) Defendant contends Gough pressured him into confessing by threatening to take away his son.

The established standard of review of a trial court's finding on a question of the voluntariness of a confession is whether the finding is contrary to the manifest weight of the evidence. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 120; *People v. Prim* (1972), 53 Ill. 2d 62, 70.) As the trier of fact the trial court is to determine the credibility of the witnesses and to resolve conflicts brought out in the testimony. *People v. Berland* (1978), 74 Ill. 2d 286, 305-06; *People v. Davis* (1983), 97 Ill. 2d 1, 21.

The State contends that the defendant was not in custody at the time the statements suppressed were given and therefore the underlying rationale for *Miranda* warnings was absent and any alleged deficiencies in those warnings are therefore without any consequence. The defendant counters that the facts of this case meet the tests set forth in *People v. Wipfler* (1977), 68 Ill. 2d 158, 168-70, and *People v. Clark* (1980), 84 Ill. App. 3d 637. We agree with the defendant's analysis.

We cannot say that the trial judge's findings were manifestly erroneous. The trial judge saw, heard and assessed the credibility of the witnesses in this case.

■ There are numerous conflicts in the testimony of the witnesses which are highlighted above. Here, as in *People v. Brown*, (1990), 136 Ill. 2d 116, 126, defendant was never told he was free to leave even though after giving his statement he was allowed to leave. The *Brown* court has listed the following factors that a court should consider in determining whether a police interrogation is custodial. Those factors are: the location, length, mood and mode of the interrogation; the number of police officers present; any indicia of formal arrest or evidence of restraint; the intentions of the officers; and the extent of the knowledge of the officers and the focus of their investigation. Here, defendant and/or defendant's wife was contacted by the police prior to defendant's appearance at the police station. A possible sentence of defendant was discussed. At the station he was in a room to which only police officers had access. He was confronted with the statements of his stepdaughters. He knew he was the accused because of police conversations with him and/or his wife. He was told DCFS would investigate his son and whether his son would stay with him. He was the focus of the investigation. He was asked to and did sign a *Miranda* form which, when considered with the other factors, added to the custodial mood and mode of the interrogation. The defendant was in the police station, and this factor will give strong weight to the suspect's belief that he is in custody. (*People v. Gorman* (1991), 207 Ill. App. 3d 461, 469-71; see *People v. Wipfler* (1977), 68 Ill. 2d 158, 168-70 (although the defendant came to the station voluntarily, the circumstances became custodial).) The trial court's ruling that defendant was in custody at the time he gave the statement to the police was not manifestly erroneous.

Next we address defendant's request for counsel. The record supports defendant's statement that he made a request for counsel.

The fifth amendment to the United States Constitution guarantees that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." (U.S. Const., amend. V.) In *Miranda*, the United States Supreme Court extended the fifth amendment privilege against self-incrimination to custodial interrogation.

Among other things, a suspect in a custodial interrogation setting must be warned that he has the right to counsel, either retained or appointed, during questioning. (*Miranda*, 384 U.S. at 479, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) The *Miranda* Court explained that "the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege." (*Miranda*, 384 U.S. at 469, 16 L. Ed. 2d at 721, 86 S. Ct. at 1625.) The primary purpose of counsel is to act as a "protective device[ ] *** to dispel the

compulsion inherent in custodial surroundings." *Miranda*, 384 U.S. at 458, 16 L. Ed. 2d at 714, 86 S. Ct. at 1619.

The fifth amendment right to counsel attaches only after the defendant's invocation. (*Miranda*, 384 U.S. at 473-74, 16 L. Ed. 2d at 723, 86 S. Ct. at 1627-28.) If a suspect invokes his right to counsel in response to *Miranda* warnings, all interrogation must cease until an attorney is present. (*Miranda*, 384 U.S. at 474, 16 L. Ed. 2d at 723, 86 S. Ct. at 1628; see also *Minnick v. Mississippi* (1990), 498 U.S. 146, 112 L. Ed. 2d 489, 111 S. Ct. 486.) The Court in *Miranda* thus "fashioned *** the rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights." *Fare v. Michael C.* (1979), 442 U.S. 707, 719, 61 L. Ed. 2d 197, 209, 99 S. Ct. 2560, 2569.

Under *Miranda*, any statement taken from a suspect without the presence of an attorney is inadmissible in the prosecution's case in chief unless the prosecution demonstrates that the defendant was given *Miranda* warnings and made a knowing and intelligent waiver of his privilege against self-incrimination. (*Miranda*, 384 U.S. at 475-77, 16 L. Ed. 2d at 724-25, 86 S. Ct. at 1628-29.) In *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, the Court went a step further, holding that once an accused has expressed his desire to deal with the police only through counsel, the State must establish both that it was the accused who initiated further discussions with the police and that he knowingly and intelligently waived the right he had invoked. *Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1884-85.

This *Miranda* "exclusionary rule" is intended to safeguard a suspect's rights under the fifth amendment and applies even if the defendant's constitutional rights under the fifth amendment were not violated. (See *Oregon v. Elstad* (1985), 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285.) The Supreme Court has explained that the fifth amendment bars only the use of statements which are compelled and that the *Miranda* exclusionary rule extends further than the fifth amendment's protection against involuntary statements. (*People v. Winsett* (1992), 153 Ill. 2d 335, 352.) *Miranda* bars the prosecution from using a statement taken in violation of *Miranda* rules in its case in chief, even if that statement was not compelled within the meaning of the fifth amendment. See *Oregon v. Elstad* (1985), 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285.

■ Here the police deflected the defendant's request for counsel with statements concerning court-appointed counsel being available to him at the time he went to court in the event he was charged. Inter-

rogation did not cease upon defendant's request for counsel, and, since we have determined this interrogation was custodial, we find that the trial judge's ruling suppressing the statements as taken in violation of *Miranda* was not manifestly erroneous.

Next, we determine whether defendant knowingly and voluntarily waived his *Miranda* rights and whether the confession was otherwise voluntary. The two issues are not identical. (See *People v. Bernasco* (1990), 138 Ill. 2d 349, 365.) A waiver of *Miranda* rights involves the Federal issues of whether the decision was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception and, second, whether the waiver was made with a full awareness both of the nature of the right being abandoned and consequences of the decision to abandon it. (*People v. Scott* (1992), 148 Ill. 2d 479, 509; *Bernasco*, 138 Ill. 2d at 356-63.) The issue of intelligent knowledge is separate from the issue of voluntariness against which coercion is a factor. *Bernasco*, 138 Ill. 2d at 356-57.

The State contends that the court can suppress the confession only where the State has engaged in coercive conduct to extract the confession. (*Colorado v. Connelly* (1986), 497 U.S. 157, 167, 93 L. Ed. 2d 473, 484, 107 S. Ct. 515, 522.) The State contends that the record shows no coercive behavior and therefore the trial court erred in suppressing the confession. However, our supreme court in *Bernasco* explained that the issue of whether the confession is coerced for Federal constitutional purposes differs from the issue of whether the statement was voluntary. *Bernasco*, 138 Ill. 2d at 365.

*Connelly* addresses situations (1) where an initial confession was given under circumstances requiring no *Miranda* warning (hence involving no issue of waiver), the voluntariness of the confessions being at issue; and (2) subsequent confessions given after *Miranda* warnings, the voluntariness of the *Miranda* waivers being at issue. In determining whether a confession is voluntary where there has been no official coercion, inquiries into the state of a defendant's mind, when divorced from any coercion by the State, are to be resolved by State evidence law rather than the due process clause of the fourteenth amendment. (*Bernasco*, 138 Ill. 2d at 356, citing *Connelly*, 479 U.S. at 166-67, 93 L. Ed. 2d at 484, 107 S. Ct. at 522.) Independently of *Miranda* and its Federal voluntariness principles, Illinois courts require that a confession must be voluntary to be admissible into evidence. *Bernasco*, 138 Ill. 2d at 365.

A determination of the voluntariness of the confession for State evidentiary purposes requires the consideration of the totality of the

circumstances. (*People v. Melock* (1992), 149 Ill. 2d 423, 447.) The court should consider the factors of the age, education, and intelligence of the accused, the duration of the questioning, and whether he received his constitutional rights or was subjected to physical punishment. (149 Ill. 2d at 447.) No single factor is controlling. (149 Ill. 2d at 447-48.) The court should also consider whether the confession was obtained through deception, trickery, promises, or misinformation. (149 Ill. 2d at 450-51.) Psychological testimony is relevant to determine the defendant's mental state. (See *Scott*, 148 Ill. 2d at 511; *Bernasco*, 138 Ill. 2d at 362.) Even where *Miranda* warnings are not required or where the interrogation is not custodial, the behavior of law enforcement officers may overbear the suspect's will to resist, and proof of whether warnings were given is relevant to determine whether the questioning was in fact coercive. (*Melock*, 149 Ill. 2d at 452.) The trial court's determinations on these issues will not be reversed unless they are manifestly erroneous. *Melock*, 149 Ill. 2d at 448; *Scott*, 148 Ill. 2d at 512.

██ The record does not show that the trial court's determination that the confession was involuntary was manifestly erroneous. The State argues that the trial court placed undue emphasis on the psychiatrist's opinion, which the State criticizes. The State argues that D'Souza's opinion of defendant's mental state was made after the fact and was incredible because of his premise that anyone who waives the *Miranda* rights is psychotic.

Because a psychiatrist forms an opinion after the fact does not make it unreliable. Every psychiatrist must usually make a determination at a later date and extrapolate the defendant's mental condition at the earlier, relevant date. (See *People v. Curry* (1992), 225 Ill. App. 3d 450, 454.) The length of time between the interview and the relevant date applies only to the weight of the testimony. (See *Curry*, 225 Ill. App. 3d at 454.) The trial court had the better opportunity to view the witnesses and had the duty of determining their credibility and the weight to give their testimony. Here, the prosecutor pointed out the psychiatrist's after-the-fact opinion, but the trial court chose to believe the psychiatrist. The opinion had more indicia of reliability because defendant's condition was documented prior to the interrogation and because the psychiatrist relied on external reports such as that of the examining physician.

The prosecutor noted all the other weaknesses of the psychiatrist's testimony, which are inherent in all psychiatric opinions. These facts include that the doctor must rely on information supplied in part by the patient; that the patient had much to gain from a favorable

opinion; and that the opinion was not foolproof. These weaknesses do not make the opinion inadmissible. The trial court assigns weight to the opinion after considering the strengths of these factors. The reviewing court must consider that the circuit court heard and saw the witnesses and was in the best position to judge the witnesses' credibility. (*People v. Reid* (1990), 136 Ill. 2d 27, 61.) A reviewing court cannot substitute its judgment for that of the trial court merely because it would have weighed the factors differently. *Reid*, 136 Ill. 2d at 61; see *In re Glenville* (1990), 139 Ill. 2d 242, 251; *People v. Long* (1991), 217 Ill. App. 3d 940, 946-47.

More troubling here, however, is the fact that the opinion may have been based on the faulty premise that anyone who .waives his *Miranda* rights is psychotic. However, we cannot read the statement in isolation. During the cross-examination and the redirect examination, the doctor explained what he meant by the statement. He explained that he was not making a generalization; rather, when someone refuses counsel he had to ask why. D'Souza limited his statement to this particular cause, which involved stress which differed from the ordinary stress involved in an interrogation because this defendant suffered from anxiety and depression. The trial court heard this testimony, and we cannot state that this one possible flaw in the opinion rendered the entire testimony incredible.

■ Finally, the State objects that the trial court "picked out" some of Gough's testimony when it rendered its judgment. We find no error in the trial court selecting bits of testimony which exemplify its reasoning. The transcript supports the presumption that the trial court reviewed all the evidence when it rendered its decision.

For the above reasons, the order of the circuit court is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.